MICHIGAN MUTUAL INSURANCE COMPANY, Appellant
(Plaintiff Below),

v.

Michael B. COMBS, Appellee
(Defendant Below).

No. 2–582A138.

Court of Appeals of Indiana,
Second District.

April 5, 1983.
As Amended April 7, 1983.

Joseph M. Dietz, Rick D. Meils, Meils, Zink, Thompson, Page & Dietz, Indianapolis, for appellant.

Max D. Rynearson, Rynearson, Laudig & Musser, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant Michigan Mutual Insurance Company (Michigan Mutual) appeals from a summary judgment entered in favor of defendant-appellee Michael B. Combs (Michael), which judgment ordered Michigan Mutual to pay Michael $15,000 under the uninsured motorist clause of an auto insurance policy issued by Michigan Mutual to Cannon Combs (Cannon). Michigan Mutual argues the trial court erred in concluding, as a matter of law, that Michael was "occupying" Cannon's auto—and hence was an "insured" within the meaning of the aforementioned clause—when he was struck and injured by an uninsured vehicle.

We affirm.

## FACTS

The parties stipulated the facts as follows:

"On January 19, 1979, Cannon Combs was driving his 1970 Volkswagon [sic] when it was disabled and ceased to operate at the intersection of Warman and Morris Streets, in Indianapolis, Indiana. Cannon Combs moved his disabled vehicle to the curb near the southbound lane of Warman. He left the scene then and went to his brother, Michael Combs' place of employment with the objective of obtaining Michael Combs' assistance in making the car operational. Michael returned with his brother to the disabled vehicle in Michael Combs' car. After arrival, Michael Combs began working on the engine of the car and in fact, the brothers left the scene twice before obtaining the proper part. When they returned the last time, Michael Combs positioned the replacement part, and was working with the wires connected to the distributor, while Cannon Combs sat in the vehicle attempting to turn the engine over. While Michael Combs was working on the engine,

he was stooped at the rear of the Volkswagon [sic] where the engine is located with his knees resting on the bumper. His position was directly in the middle of the rear of the Volkswagon [sic]. While in this position, Michael Combs was struck by another vehicle. As a result of the impact, Michael Combs was thrown upward and his body came in contact with the trunk lid opened over the engine at the rear of the car. The vehicle which struck Michael Combs was owned by Christine Book and driven by Peggy Smotherman, neither of whom were insured."

*Record* at 124–25.

The parties further stipulated that, at the time of the accident, Cannon's 1970 Volkswagen was insured under a policy issued by Michigan Mutual which protected the "insured" against damages caused by an uninsured motorist. The uninsured motorist clause defines (in Part IV of the policy) an "insured" as "any ... person while *occupying* an insured automobile." *Id.* at 13 (emphasis supplied). "Occupying", according to the policy, means "in or *upon* or entering into or alighting from." *Id.* at 12 (emphasis supplied).[1]

On February 22, 1980, Michigan Mutual filed an action for a declaratory judgment against Michael, asking the trial court to rule that he "was not 'occupying' the 1970 Volkswagen such that he would be an 'insured' under the terms ... of the policy issued to Cannon B. Combs[.]" *Id.* at 7. On September 26, 1980, Michigan Mutual filed a motion for summary judgment in which it once again asserted Michael's failure to qualify as an "insured" under the pertinent policy provision. Michigan Mutual's motion incorporated the stipulation of fact referred to above, which further set forth the parties' understanding "that [Michael's] injury is of sufficient value that they agree that the full amount of coverage would be due and owing if the coverage is found to exist." *Id.* at 125.

---

1. There is no other language in the policy which tends to explain or modify the meaning of "occupying". Part IV is the Uninsured Motorists section and it describes in several places the insured as occupying an insured or a non-owned automobile. The word passenger, however, only appears in Part IV in connection with replacement of an insured automobile.

The trial court granted summary judgment for Michael on September 3, 1981, concluding, as a matter of law, that he was "occupying" Cannon's Volkswagen when injured. Michigan Mutual was ordered to pay Michael $15,000, the full amount of coverage provided under the policy's uninsured motorist clause.

## ISSUE

A single issue is raised for our review: Did the trial court err in concluding, as a matter of law, that Michael was "occupying" Cannon's auto—and hence was an "insured" under the uninsured motorist provision of the policy between Cannon and Michigan Mutual—when he was injured by the uninsured vehicle?

## DECISION

PARTIES' CONTENTIONS—Michigan Mutual focuses on policy language in arguing that one who is "upon" an insured vehicle must occupy it for purposes of uninsured motorist coverage. Primary reliance is placed upon *Pennsylvania National Mutual Casualty Insurance Co. v. Bristow*, (1966) 207 Va. 381, 150 S.E.2d 125, in which the Supreme Court of Appeals of Virginia denied coverage under similar facts, concluding that to be "in or upon" a vehicle at the moment of injury, one must have had "some connection with 'occupying' " the car. 150 S.E.2d at 128. Because Michael was not riding in the insured vehicle when it became disabled and had not planned to ride in it after the necessary repairs were completed, he was not "upon" the insured auto, according to Michigan Mutual.

Michael's response is that the trial court's conclusion was proper in light of *United Farm Bureau Mutual Insurance Co. v. Pierce*, (1972) 152 Ind.App. 387, 283 N.E.2d 788, *trans. denied*, the only pertinent Indiana decision. The *Pierce* court relied on the "physical contact" rule, under which evidence of physical contact with an insured vehicle prior to injury was sufficient to warrant the conclusion that the claimant was "upon" the vehicle within the meaning of a medical payments provision employing

the same language used here. Emphasizing that there is no dispute as to the fact of pre-injury contact, Michael contends that the trial court correctly decided that he was "occupying" Cannon's auto for purposes of coverage.

CONCLUSION—Michael was "upon" Cannon's auto at the time of injury so as to be "occupying" it within the meaning of the uninsured motorist clause. Thus, the trial court properly entered summary judgment in Michael's favor.

This case is an exercise in semantics as we must ascertain the intended meaning of the word "upon" when used as part of a definition of an insured as being one "occupying" an insured automobile—an exacting task in view of the diverse opinions on this subject. And, our factual setting is different from many of the reported cases. Most cases, including one Indiana decision, involve a claimant who had been or intended to be a driver or passenger of the insured vehicle. In such cases, the claimants fit more easily into the mold of "occupants" as that word is commonly understood. Here, we are presented with a claimant who, although his actions were directly related to the operation of the vehicle, was not a driver or passenger of the insured car. The reported cases do, however, provide us with some guidance.

We agree with the determination of numerous courts that an ambiguity is created by the use of the term "upon" in a clause providing coverage for injuries inflicted while the insured is "in or upon or entering into or alighting from" a motor vehicle. *See, e.g., Wolf v. American Casualty Co.*, (1954) 2 Ill.App.2d 124, 118 N.E.2d 777; *Pierce, supra; Madden v. Farm Bureau Mutual Auto Insurance Co.*, (1948) 82 Ohio App. 111, 79 N.E.2d 586; *Sherman v. New York Casualty Co.*, (1951) 78 R.I. 393, 82 A.2d 839.

Standard dictionary definitions of "upon" are illustrative of the various meanings which may be attached to the word:

"1: ON 2a: upward so as to be on [jumped upon the horse] b: in a high

position on [built a house upon the hill] 3: having a powerful influence on: lying heavily on [the enchantment of the beautiful scenery was still upon me—Scott Fitzgerald] [the hush upon the dinner table—Maurice Hewlett] ... 6 a(1): in or into close proximity or contact with by way of or as if by way of attack [the enemy is upon us] ... (2): into sudden esp. unexpected contact with [came upon the letter in an old desk] ... 8—used as a function word to indicate (1) a beginning course of action or an action or condition that is beginning ... or (2) an area of activity or being [a dashing young ensign just come upon the town—Washington Irving] ...."

Webster's Third New International Dictionary 2517, 2518 (1976). The list continues, but it is obvious that reasonable persons could differ in their opinions as to the meaning of the word "upon." So, to be "upon" a car is not necessarily to be "on" or even in contact with it.

We are faced, then, with ambiguous contract language. And that ambiguity is particularly appropriate for summary judgment interpretation because it is patent; *i.e.*, it is an ambiguity which is apparent on the face of the contract by reason of the language used, and it produces a pure question of law. *Churchwell v. Firestone Industrial Products Co.,* (1982) Ind.App., 431 N.E.2d 853, *trans. denied; R.R. Donnelley & Sons Co. v. Henry Williams Inc.,* (1981) Ind.App., 422 N.E.2d 353, *trans. denied.* Thus, in this summary judgment setting, we must decide whether the trial court, as a matter of law, correctly interpreted the insurance contract. *See Ohio Casualty Insurance Co. v. Ramsey,* (1982) Ind.App., 439 N.E.2d 1162, *trans. denied; R.R. Donnelley & Sons, supra.*

As a reviewing court, we must ferret out the intent of the parties. To accomplish this, "the first resort in all cases is the natural signification of the words employed, in the order of *grammatical arrangement in which the framers of the writing have*

placed them." *Buddenberg v. Welch,* (1933) 97 Ind.App. 87, 89, 185 N.E. 865, 866 (quoting *Blythe v. Gibbons,* (1895) 141 Ind. 332, 35 N.E. 557) (emphasis supplied). *Accord Swigert v. Miles,* (1921) 75 Ind.App. 85, 130 N.E. 130. Keeping this cardinal principle in mind, we must apply the rules of contract construction to the precise wording of Michigan Mutual's uninsured motorist clause.

Michael was covered by the insurance agreement if he was "occupying" the insured vehicle, and "occupying" means "in or upon or entering into or alighting from." Initially, we observe that each definition of the word "occupying" is separated by the conjunction "or", which requires that each definition be used alternatively.[2] As one court has put it, we must assume "the use of the word 'upon' was clearly intended to cover a class of persons and situations not necessarily included in the other terms used." *McAbee v. National Mutual Insurance Co.,* (1967) 249 S.C. 96, 152 S.E.2d 731, 732. This is but a restatement of the general rule that courts may not construe words in a contract in such a way as to render them meaningless. *See University Casework Systems, Inc. v. Bahre,* (1977) 172 Ind.App. 624, 362 N.E.2d 155.

Our second grammatical observation concerns the nature and operational effect of the words employed in the pertinent clause. The words and phrases "in," "upon," "entering into," and "alighting from" are all used as predicate adjectives to rename or describe their subject. Their function as modifiers is to qualify or limit the meaning of "occupying"; therefore, they cannot be construed properly without reference to that word.[3] Once again, there is a corresponding principle of contract construction: The meaning of a contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases read alone. *Evansville-Vanderburgh School Corp. v. Moll,* (1976) 264 Ind. 356, 344 N.E.2d 831; *Tastee-Freeze Leasing Corp. v. Milwid,* (1977) 173 Ind.App. 675, 365 N.E.2d 1388, *trans. denied.*

---

**2.** *See* The American Heritage Dictionary of the English Language 923 (1970).

**3.** *See generally* C. Vivian & B. Jackson, English Composition 284, 286–87 (1961).

In summary, our analysis is governed by giving each of the words and phrases ("in," "upon," "entering into," and "alighting from,") its own distinct meaning and at the same time construing each term with reference to the word it defines ("occupying"). As Michael was neither in nor entering into nor alighting from the vehicle, we are led to consideration of the decisions interpreting the word "upon".

In *United Farm Bureau Mutual Insurance Co. v. Pierce, supra,* the only pertinent Indiana case, the first district examined the phrase "in or upon or entering into or alighting from" as used with respect to affording medical payments coverage to one who was "occupying" an insured vehicle. The specific question with which the *Pierce* court was faced was whether the plaintiff driver was "upon" his car when he was injured while attempting to push it out of an accumulation of snow. In answering that question affirmatively, the *Pierce* court relied on the "physical contact" rule, under which any evidence of physical contact with an insured vehicle before injury is sufficient to establish that the insured was "upon" it.

Other courts are in agreement that an injured party need not have been on top of or physically supported by an insured vehicle in order to have been "upon" it at the moment of injury. *E.g., Wolf, supra; McAbee, supra.* But several courts have rejected the position taken in *Pierce* that mere pre-injury physical contact with the vehicle is sufficient. *E.g., Lokos v. New Amsterdam Casualty Co.,* (1949) 197 Misc. 40, 93 N.Y.S.2d 825, aff'd, 197 Misc. 43, 96 N.Y. S.2d 153; *Robson v. Lightning Rod Mutual Insurance Co.,* (1978) 59 Ohio App.2d 261, 393 N.E.2d 1053; *Ferguson v. Aetna Casualty & Surety Co.,* (Tex.Civ.App.1963) 369 S.W.2d 844. The logic of such courts is best expressed by the following quotation from *Robson, supra:*

"We reject 'the physical contact' rule as it is an arbitrary rule which may result in the frustration of coverage in bona fide cases such as where the person was in the process of entering the vehicle but was still a hand's length away from contact-

ing the vehicle at the time of the injury, and may allow recovery in other cases where there was no reasonable relationship between the one injured and the vehicle."

393 N.E.2d at 1055.

We recognize that application of the "physical contact" rule could unduly restrict coverage in some factual settings. In other settings, the rule could serve to expand coverage beyond the contemplation of the contracting parties. The *Pierce* court and others applying the physical contact rule have seldom been faced with facts which might require limitation of this concept: The injured party in *Pierce* was the driver of the insured vehicle—he had been an "occupant" of the car and intended to drive away in it once it was freed of the snowbank. To afford coverage to the *Pierce* claimant was both equitable and reasonable in light of his intended "occupancy" as that word is commonly understood.

Equally understandable are the results in some decisions which have not relied exclusively upon the physical contact rule. Thus, recovery has been allowed for accidents occurring when the claimant was putting chains on a tire, *Cocking v. State Farm Mutual,* (1970) 6 Cal.App.3d 965, 86 Cal. Rptr. 193; paying a taxicab fare, *Allstate Insurance Co. v. Flaumenbaum,* (1970) 62 Misc.2d 32, 308 N.Y.S.2d 447; loading a stereo into the vehicle's trunk, *Robson, supra;* and exchanging accident information while standing in front of the insured auto. *Wolf, supra.* In such cases, there was no physical contact other than the injury-causing impact, but there was a sufficient relationship between the claimant and the car so that it could reasonably be said that the claimant was an "occupant". To strictly apply the physical contact rule would have been to deny recovery to claimants who maintained a close and substantial connection with occupancy and use of the insured vehicle.

This group of cases does not necessarily leave us adrift without a compass. The common denominator of the cases is the fact that in each case the recovering claimant either was or was intended to be a

passenger or operator of the insured vehicle. *Contra Hart v. Traders and General Insurance Co.,* (Tex.Civ.App.1972) 487 S.W.2d 415. In contrast, claimants who were neither operators nor passengers of insured vehicles have been denied coverage because, although there was evidence of physical contact, there was no connection with the vehicle other than the injury-causing impact. *Hollingworth v. American Guarantee and Liability Insurance Co.,* (1969) 105 R.I. 693, 254 A.2d 438; *Ferguson, supra.* So it seems that regardless of physical contact, it is the claimant's *relationship* with the insured auto that determines whether the claimant was "upon" the car so as to have been "occupying" it for purposes of coverage. It is the parameters of that relationship that we must define in order to determine whether Michael was "upon" Cannon's car at the time of the accident.

In *Bristow, supra,* the claimant was a non-operator/passenger who was injured while repairing the disabled insured vehicle. The Supreme Court of Appeals of Virginia refused coverage, concluding that operator/passenger status was a threshold requirement:

> "*The word 'upon' must be viewed with relation to the word in the policy which it defines, that is, the word 'occupying.'* The word 'upon' must be read together with the other words in the phrase in which it is found, that is, the words 'in * * * or entering into or alighting from.' *When the disputed word is so viewed and read, it is clear that to be 'upon' an insured vehicle is to have some connection with 'occupying' it.* To give the word such a meaning is to fit it snugly into the context of the phrase in which it appears, all the other words of which are directly connected with 'occupying.'
> Within the purposes contemplated here, *a person may be said to be 'upon' a vehicle when he is in a status where he is not actually 'in,' or is not in the act of 'entering into or alighting from,' the vehicle but whose connection therewith immediately relates to his 'occupying' it.*"

150 S.E.2d at 128. Michigan Mutual urges us to adopt the *Bristow* requirement that only an operator or a passenger has a suffi-

cient relationship with the auto so as to be "upon" it for purposes of coverage. Indeed, the insurance company seductively argues that Michael's "connection with the particular automobile was a fortuitous blend of circumstances, none of which directly related to *his* actual use of the car for transportation." *Appellant's Brief* at 16. Beguiling as this argument may be, we must recognize the existence of alternative interpretations that do not construe the word "upon" so narrowly.

In *Hart, supra,* the Texas Civil Court of Appeals observed that because the parties agreed by contract that the word "occupying" should be given a certain meaning, namely "in or upon or entering into or alighting from", that express meaning should prevail even over the ordinary and usual meaning of the word defined. Thus, the court concluded that because "practically the entire weight of the plaintiff's body was being supported from beneath by the insured car while [he] was lying 'upon' the fender," the claimant was entitled to recover as an occupant even though he was not a passenger or an operator of the vehicle. 487 S.W.2d at 420. And the court in *Robson, supra,* rejected strict rules of construction like the physical contact rule or the operator/passenger rule in favor of an approach that is "based on an analysis of the relationship between the vehicle and the claimant within a reasonable geographic perimeter." 393 N.E.2d at 1055.

Although we question the *Hart* court's somewhat mechanistic adherence to the physical contact rule, the rationale for the result reached therein is clear. Insurance companies may intend to insure only those persons with operator/passenger status, but in defining the word "occupying" as meaning "upon", they have failed to clearly so state. Thus, the result in *Hart* and the extremely flexible rule adopted in *Robson* were mandated by the use of ambiguous contract language—language which requires a construction favorable to coverage.

The dilemma now becomes one of deciding which conflicting judicial interpretation of the word "upon" should govern this case. The answer lies in a rule of construction.

A cardinal principle of insurance law, recognized in most jurisdictions, is that ambiguous contracts of insurance are to be construed liberally in favor of coverage. *See* 44 C.J.S. *Insurance* § 297c (1945). Indiana is not one of the exceptions. As early as 1929, the Indiana Supreme Court succinctly stated the rule: "If a policy be ambiguous, the doubt will be resolved against the insurer." *Masonic Accident Co. v. Jackson,* (1929) 200 Ind. 472, 164 N.E. 628, 631. *Accord State Security Life Insurance Co. v. Kintner,* (1962) 243 Ind. 331, 185 N.E.2d 527; *Huntington Mutual Insurance Co. v. Walker,* (1979) Ind.App., 392 N.E.2d 1182, *trans. denied; Farmers Mutual Aid Ass'n v. Williams,* (1979) Ind.App., 386 N.E.2d 950; *Utica Mutual Insurance Co. v. Ueding,* (1977) 175 Ind.App. 60, 370 N.E.2d 373. And in *Kintner, supra,* Justice Arterburn expressed the rationale for such a liberal rule of construction:

> "An insurance contract is a detailed and complex instrument, drafted by expert legal counsel, standardized and presented in mass-produced form and delivered to the applicant for acceptance, normally without benefit of legal counsel on his part. It has been called a 'contract of adhesion' for the reason that the insured is expected to 'adhere' to it as it is, with little or no choice as to its terms.
>
> . . . . .
>
> Coupled with this situation is the recognized fact that rarely, if ever, does an insured read his insurance contract . . . . In fact, realistically, even if the insured had the inclination to attempt to read the policy, I doubt that he would gain much more knowledge than he previously had because of the technical language he would encounter.
>
> . . . . .
>
> Although the law has not found a proper rationale for handling the problems arising from a failure to read all the detailed terms of an insurance contract, legal realism has attempted to ameliorate somewhat the harshness of the situation by construing such adhesion contracts against the parties selling or delivering the same."

185 N.E.2d at 531–32 (Arterburn, C.J., concurring) (citation omitted).

With this kind of binding precedent before us, we must opt for coverage. There are respectable lines of authority producing conflicting interpretations of the word "upon"; regardless of which interpretation we might prefer, that operative word is ambiguous. And because the ambiguity was created by language used by the insurer, the interpretation favoring coverage, whether it be an application of the physical contact rule or the *Robson* claimant-vehicle relationship analysis, must be applied. Either approach supports coverage in this case—Michael was in physical contact with the car and his actions evidenced a relationship with the vehicle and its operation. So he was upon Cannon's auto, and the summary judgment in his favor was proper. Although Michigan Mutual could have more clearly defined "occupying" in terms of passenger/operator status, it failed to do so. We cannot now re-write the insurance policy.

Judgment affirmed.

SHIELDS and SULLIVAN, JJ., concur.