STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant (Plaintiff Below),

v.

Brian K. BARTON, et al., Appellee (Defendant Below).

No. 2–784 A 219.

Court of Appeals of Indiana, Second District.

June 29, 1987.

Thomas D. Blackburn, Robert J. Palmer, South Bend, for appellant.

Edgar W. Bayliff, Kokomo, John M. Guy, Monticello, for appellee.

SHIELDS, Presiding Judge.

State Farm Mutual Automobile Insurance Company brought a declaratory judgment action seeking a declaration by the court of its responsibilities under a policy of automobile insurance issued to the Johns family and four policies of automobile insurance issued to the Barton family.[1] Barton and State Farm filed cross motions for summary judgment. The trial court rendered summary judgment against State Farm on the question of liability coverage under the Johns' policy and rendered summary judgment for State Farm on the question of medical coverage under the respective Johns and Barton policies. The court certified the partial summary judgments as final pursuant to Indiana Rule of Trial Procedure 54(B) and both parties appeal. We affirm.

The stipulated facts of the case are as follows:

"On September 30, 1982, four teenage boys were riding in Johns's automobile. Johns was driving. The boys, who had been to a school function from 9:00 a.m. to about 10:00 a.m., were driving around. About 11:00 a.m., the defendant intentionally fishtailed the car on a gravel road. Brian Barton protested the Johns' reckless driving, but Johns lost control of the vehicle, hit a utility pole, breaking it off, and the pole fell on the car. The utility pole had two wires, one of which carried about 7,200 volts, and one of which was a ground wire. No one was injured in the crash but the car was stuck against the pole on the west edge of the side ditch on the west side of the road, headed north, which had been the direction of travel. The boys exited through the driver's side doors because of a visible electrical wire near the passenger doors. Brian Barton and other passengers walked from the driver's side doors around the rear of the car, ducking under the visible wire, and made it safely to the roadway. One of the wires was lying in the grass at the edge of the roadway.

After a few moments, Johns returned to the car and attempted to get it unstuck. Barton walked from the roadway, to the front of the car, without making contact with any electrical wires. He pushed the front of the car, helping Johns try to remove it from the ditch. Barton claims that he was requested by Johns to help push, but Johns denies that he requested Barton to help. The auto would not move. The engine was then shut off. Johns stepped out of the vehicle and at the time same [sic] Barton started back to the roadway, but when Barton was approximately three feet from the auto, he tripped on or stepped

---

on the wire in the grass and was severely burned, eventually losing his leg. At the time Barton stepped on the wire, the Johns' car was shut off.

Kimball Tetzloff, who was in the car at the time of the collision, but was in the roadway during the attempts to remove the car, states that the efforts to move the car caused the pole to move and the wires to fall. Johns states that the pole did not move."

Record at pp. 126–127.[2]

At the time of the accident, the Johns automobile was insured under a policy which provides liability coverage. Under this policy, State Farm agreed to:

"1) pay damages which an insured becomes legally liable to pay because of:

a. bodily injury to others; and

b. damage to or destruction of property including loss of its use, caused by accident *resulting from* the ownership, maintenance or use of your car; and

2) defend any suit against an insured for such damages with attorneys hired and paid by us."

Record at 45 (emphasis added).

This policy, as well as four policies issued to the Bartons by State Farm, also provides medical payments coverage for bodily injury sustained while "occupying" the vehicle. "Occupying," according to the policies' definitions, means "in, on [upon], entering [into] or alighting from."[3] Record at 44, 54.

Two issues, restated and consolidated, are presented for our determination:

1) whether the trial court erred in concluding Johns is entitled to liability coverage for Barton's injuries under Johns' State Farm policy; and

2) whether the trial court erred in concluding the State Farm policies do not pro-

vide medical payment coverage to Barton for his injuries.

## I.

State Farm contends the "resulting from" language contained in the liability portion of the Johns policy must be construed as expressing a proximate cause test. It argues Barton's act of leaving the roadway and returning to the automobile was an unforeseeable, intervening cause of his injuries, and consequently, his injuries were not proximately caused by Johns's use of the automobile. Therefore, State Farm asserts, Johns's policy does not provide liability coverage to Johns for Barton's injuries.

State Farm's argument is misplaced. The function of a declaratory judgment action is:

"to determine ... any question of construction or validity arising under ... [a] contract ... and obtain a declaration of rights, status, or other legal relations thereunder."

Ind.Code Ann. § 34-4-10-2 (Burns Repl. 1986). In accord with this statute, State Farm initiated this action to obtain a judicial declaration of its obligations under its contract of insurance and posed the question whether the Johns's policy provides liability coverage for Barton's injuries.

Barton's complaint, termed a cross-complaint, alleges Johns willfully and wantonly misoperated the insured vehicle at the time of the subject incident and this conduct proximately caused Barton to suffer injury. Record at 72. By alleging the manner of operation of the vehicle proximately caused his injuries, Barton's claim sets forth facts within the risk which State Farm concedes it insures: "bodily injury to others ... caused by accident resulting from the ... use of ... [the insured's] car." Record at 45. Therefore, State Farm has a duty to defend Johns in the

---

**2.** This stipulation of facts was utilized by the trial court in ruling on the motions for summary judgment. At the pre-appeal conference on this matter, the parties stipulated the same facts for purposes of appeal.

**3.** The only difference in the policies' language is that in two policies the bracketed language is included. The plaintiff argued the distinction between "on" and "upon" is important to the disposition of the case in its motion for summary judgment but did not raise the language distinction on appeal.

action commenced by Barton even though that duty is not specifically argued.

Further, the Johns' policy obligates State Farm to pay damages which Johns becomes legally liable to pay because of bodily injury which comes within the insured risk. In order for Johns to be legally liable for these damages, Barton must prove, in the liability case of *Barton v. Johns*, that Johns' wilful and wanton operation of the insured vehicle was the proximate cause of Barton's injuries. However, if, as State Farm claims, Barton's act of returning to the automobile was an unforeseeable, intervening cause of his injuries, Johns will not be legally liable to pay damages and accordingly, State Farm will not have a contractual responsibility to Johns to pay a non-existent judgment. Thus, State Farm's duty to pay damages is dependent on the results of the separately-tried liability suit. The duty to pay is not a question of contract construction or validity nor a coverage question. Rather, it rests upon Barton's ability to prove at trial Johns's willful and wanton operation of the vehicle proximately caused Barton's injuries.

To the extent the trial court's judgment against State Farm requires State Farm to defend Johns, it is affirmed. State Farm's duty to pay, however, depends on whether Johns is found legally liable for Barton's injuries.

## II.

The second issue concerns the medical payment provision of the respective policies which provide coverage for bodily injury inflicted while "occupying" the vehicle. "Occupying," as defined in the policies, means "in (,on,) [or upon or] entering [into] or alighting from." Record at 44, 54.

The Bartons contend the trial court erred in concluding, as a matter of law, Barton was not "occupying" the Johns vehicle at the time he sustained his injuries. Barton cites *United Farm Bureau Mut. Ins. Co. v. Pierce* (1972), 152 Ind.App. 387, 283 N.E.2d 788, and *Michigan Mut. Ins. Co. v.*

*Combs* (1983), Ind.App., 446 N.E.2d 1001, for the proposition he was "upon" the Johns vehicle within the meaning of the insurance policy while pushing it. Then, according to Barton, he was "alighting" from the vehicle at the time he abandoned his efforts to push the vehicle, started back to the roadway, and tripped or stepped on the electric wire which was approximately three feet from the vehicle.[4]

Barton was "upon" the Johns vehicle when he was pushing it in an attempt to remove the vehicle from the ditch. In *United Farm Bureau Mut. Ins. Co. v. Pierce* (1972), 152 Ind.App. 387, 283 N.E.2d 788, Pierce's automobile became stuck in the snow. Pierce got out of the vehicle and, while pushing on the front fender, slipped and cut the fingers of his left hand. Pierce's insurance policy included medical payment provisions applicable when the insured was "occupying" the vehicle and defined "occupying" as being "in or upon, entering into or alighting from" the automobile. The court ruled Pierce, while pushing, was "upon" his car and, therefore, was covered by the policy. 152 Ind.App. at 390, 283 N.E.2d at 791. Similarly, in *Michigan Mut. Ins. Co. v. Combs* (1983), Ind. App., 446 N.E.2d 1001, the claimant was working on the rear engine of the insured Volkswagon, his knees resting on the bumper, when he was struck by an uninsured vehicle. The automobile insurance policy contained an uninsured motorist clause with wording identical to that found in *United Farm Bureau*. This court found the claimant was "upon" the insured automobile and summary judgment in his favor was proper. 446 N.E.2d at 1007.

■ Having determined Barton was "upon" the vehicle at the time he was pushing it, the critical issue is whether Barton was in the process of "alighting from" the vehicle at the time of injury so as to bring him within the coverage afforded by the State Farm policies. Barton argues the policy term "alighting from" is ambiguous, and, therefore, the court must

---

4. Barton does not argue that he was "upon" the vehicle within the meaning of the policies at the time he sustained injury. Thus, we are confined to the issue of whether Barton's injury occurred while he was "alighting from" the vehicle.

liberally construe the term in favor of coverage; State Farm argues to the contrary.

Even assuming the term "alighting from" is ambiguous and requires a liberal construction, Barton was not "alighting from" the vehicle within the meaning of the respective State Farm policies at the time he sustained injury. In considering the definition of "occupying" contained in the policy, an important distinction exists between the words "in" and "on [upon]" and the words "entering [into]" and "alighting from" which leads to our decision in this case. The words "in" and "on [upon]" refer to specific positions with respect to the vehicle, "in" being inside the vehicle and "on [upon]" being outside the contour of the vehicle. On the other hand, "entering [into]" and "alighting from" refer to the continuous actions involved in effecting an entrance into [5] or exiting from the vehicle.[6] Both "entering [into]" and "alighting from" are processes which either end or begin when the actor is inside the vehicle.[7] Accordingly, the ambit of insurance protection is broader for those who are becoming or have been a driver or passenger of the insured vehicle as compared to those who do not have this direct relationship with the vehicle, e.g., a passerby who happens to sit on the hood of a vehicle.

The undisputed facts reveal Barton, and the other occupants of the Johns vehicle, exited the automobile immediately after it hit the utility pole and walked to the safety of the roadway. At this point, Barton and his fellow occupants had accomplished their exit from the vehicle and the process of "alighting from" was complete.

When Barton and Johns returned to the vehicle and attempted to get it unstuck, Barton pushed the front of the vehicle. He did not re-enter the vehicle nor exhibit an intent to re-enter the vehicle. Thus, even construing the term "alighting from" in a liberal manner, Barton never obtained the requisite status of being inside the vehicle so the process of "alighting from" could again begin. Consequently, Barton was not engaged in "alighting from" the Johns vehicle at the time of injury, and the trial court properly found Barton was not entitled to coverage under the medical payment provisions of the respective State Farm policies.

The trial court's judgment in favor of State Farm on the question of medical payment coverage is affirmed.

Judgment affirmed.

BUCHANAN and SULLIVAN, JJ., concur.

**5.** In *Carter v. Travelers Indemnity Co.* (1962), La.Ct.App., 146 So.2d 257, 259 the court, construing identically worded policy language, stated "'entering' is ... an affirmative act ... to effect an entrance." 146 So.2d at 259. *See New Amsterdam Casualty Co. v. Fromer* (1950), D.C., 75 A.2d 645, (the term "entering" in a medical payment provision is equivalent to "coming or going into; passing into the interior of; passing within the outer cover or shell of; penetrating; piercing").

**6.** *See Carta v. Providence Washington Indemnity Co.* (1956), 143 Conn. 372, 378, 122 A.2d 734, 737 ("A person is not in the process of alighting if, at the time, he has completed all acts normally performed by the average person in getting out of an automobile under similar conditions and if he has embarked upon a course of conduct entirely distinct from acts reasonably necessary to make an exit from the car."); *Stoddard v. "AID" Insurance Co. (Mutual)* (1976), 97

Idaho 508, 510, 547 P.2d 1113, 1115 (insured is not "occupant" in terms of "alighting from" the vehicle if he has completed the acts which are normally performed in getting out of the automobile); *Kantold v. State Farm Ins. Co.* (1979), 62 Ohio Misc. 11, 405 N.E.2d 744, 745 (to come within the scope of a medical payment clause covering persons "alighting from" the school bus, the "injury must be within a reasonable time incident to making an exit out of and away from the vehicle"); *Whitmire v. Nationwide Mutual Insurance Company* (1970), 254 S.C. 184, 191, 174 S.E.2d 391, 394 (the act of alighting is not completed where the actor is "still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions").

**7.** The process of "entering [into]" ends at some point when the actor is inside the vehicle whereas the process of "alighting from" begins with the actor inside the vehicle.