**AUTO–OWNERS INSURANCE COMPANY, Plaintiff,**

v.

**Sean R. POWELL and Schaller Trucking Corporation, Defendants.**

**No. IP 89–1048–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 14, 1991.

Michael K. Irwin, Stewart & Irwin, Indianapolis, Ind., for plaintiff.

Leonidas G. Condos, Condos & Cushing, Indianapolis, Ind., for defendant Powell.

Stephen M. Gentry, Indianapolis, Ind., for defendant Schaller.

## ENTRY

BARKER, District Judge.

Plaintiff Auto–Owners Insurance Company filed this declaratory judgment action against defendants Sean R. Powell and Schaller Trucking Corporation, seeking a resolution of the issue of whether Powell was covered by the underinsured motorist provision of Schaller Trucking's auto insurance policy issued by Auto–Owners in connection with an accident which occurred on October 27, 1987. This action is currently before the court on the plaintiff's and Powell's cross motions for summary judgment. For the reasons stated below, the plaintiff's motion for summary judgment is granted, and Powell's motion for summary judgment is denied.

### I. Background

The following facts are undisputed by the parties. The auto accident in which Powell was injured occurred on October 27, 1987. Powell was at the time employed by Schaller Trucking and was driving a van owned by Schaller Trucking southbound on I–465, approaching Indianapolis. At approximately 12:46 A.M., when Powell was near the Rockville Road exit, Powell lost control of the van. The van went into a spin, struck a concrete median wall at least once, and wound up coming to rest facing west, perpendicularly across the highway, with the rear of the van up against the median wall and the rest of the van extending across an emergency berm and into the left lane of I–465 South. Powell attempted to restart the van without success.

Another driver, a man named Kenneth Lee Tolen, witnessed this accident and stopped his vehicle, also a van, on the opposite side of I–465 South in order to offer help. He crossed the lanes of I–465, waving a flashlight he had with him to the north in an attempt to alert approaching cars. At this point, there is some disagreement as to the facts. Powell testified in his deposition that he was still in the van at the time when Tolen crossed the highway and reached Powell's van. Powell Deposition, p. 32. However, Tolen testified that Powell was already out of the van by the time he arrived. Tolen Deposition, p. 17. However, both agree that while Powell was apparently not injured physically after the first accident, he was shaken up and appeared a little dazed to Tolen.

After Tolen had asked Powell if he was all right and if the van would restart, he told Powell that he was going to go back to his van to radio for help. Powell testified that it was at this point that he got out of his van. Powell Deposition, p. 34.

After getting out of his van, Powell said he "tried to walk it off a little bit." *Id.*, p. 34. When Auto–Owners' attorney Michael K. Irwin asked Powell what he meant by this, Powell answered:

> I was shaken, I was nervous. I tried to get a little air and walk around a little bit to try and get myself back together. Then I turned around and looked back at the van. I saw the van was facing the way it was so I figured that the traffic couldn't see my van because of the way it was facing, due to the lights. It was facing east and west. So I looked over at his [apparently Tolen's] van, his lights was on so I crossed over to where he was. So I walked back down towards the van, and I looked around the van to see if it was clear for me to cross, and it wasn't. There was traffic coming so I turned again to walk away from the van, and that's when I felt a lot of pressure and myself flying through the air.

*Id.*, p. 35.

The pressure to which Powell referred came from a second accident, the one in which Powell was injured. An automobile driven by Gregory Powers collided with Powell's disabled van. The force of this collision thrust Powell's van into him and apparently carried him some distance down the highway.

Irwin asked Powell how much time elapsed from when he had gotten out of the van until the second accident occurred when he was hit by his van. When Powell answered that he was not sure, Irwin asked if it was a matter of seconds or minutes, and Powell answered that it was minutes. *Id.* When Irwin asked if Powell

knew approximately how many minutes it was, Powell answered, "Between two and five minutes, I guess, somewhere along in there." *Id.*, p. 36.

Irwin questioned Powell further as to where he had walked after he got out of his van. The court quotes this examination in detail as it explores the key issue raised by the pending motions.

Q. Now, when you say you walked it off, where had you walked?

A. I walked to the left of the van. From where the van was facing, I walked to the left of the driver's side of the van.

Q. Did you get out of the driver's side?

A. Yes.

Q. After you got out, where did you walk to?

A. I walked to the left of the van.

Q. I guess I don't understand what you mean then, because you were on the left side of the van.

A. Yes. I was in the emergency area.

Q. Okay.

A. And I am not sure how far I walked, but I walked away from it.

Q. In what direction did you walk away from it?

A. South.

Q. How long did it take you to walk wherever you walked to and come back would you say?

A. About a half a minute or so.

Q. You don't know how far away from the van you got?

A. No.

Q. Were you in the emergency berm when you walked to the south?

A. Yes.

Q. When you walked back to the van after you had walked it off and you walked back to the van, where did you go?

A. I walked to the front of the van to look around to see if the traffic was clear.

Q. What was your intention at that time of doing?

A. To cross over to where his [Tolen's] van was.

Q. Why was that?

A. Because his van was sitting with the lights on, and I felt the traffic could see his lights and his van, whereas they couldn't see mine because of the direction it was facing.

Q. Now, where exactly were you standing in relation to the van when the second impact occurred, the one that hit you?

A. I was walking away from the van south.

Q. Were you standing to the front, to the side, whereabouts?

A. I was walking back towards the back of the van away like, I guess, you could say at an angle towards the median.

Q. —it's my understanding that when the second accident occurred, you were on your way around the front of the van.

A. No. I was on my way southbound away from the van, because there was oncoming traffic.

Q. I see. What part of the van was pushed into you?

A. I don't know. My back was to the van.

Q. So you were facing south when all this happened?

A. Yes.

Q. All you know is you were hit by the left side of your van, but you don't know what part of the left side, is that what you are saying?

A. Yes.

Q. Do you know how far the van had to be pushed to the south from its resting point to the point that it struck you?

A. No, I don't know.

Q. Were you aware at any time that there was going to be a collision with your van before it happened?

A. No.

Powell Deposition, pp. 36–40.

In the meantime, Tolen had crossed back to his van on the other side of I–465 South. Tolen was not watching Powell at this time. Tolen Deposition, p. 21. He used his CB to call React, which apparently is a service which calls and directs rescue personnel to accident sites as needed upon receiving notice on the CB. *Id.*, p. 21. Tolen was unaware of what Powell was doing during this period of time. *Id.* Tolen apparently had no trouble reaching React on the CB. *Id.* After he had talked with a React representative, he put down his mike and started to get out of his van, at which point in time the second accident involving Powell occurred. *Id.* Specifically, Tolen said he "hadn't even gotten out of the van. [He] had just opened the door and started to step out when that happened." *Id.*, p. 22. Although Tolen heard the crash of this second accident, he did not actually see it at first, as a semi in the middle lane of I–465 South blocked his view. *Id.* However, he did see Powers' and Powell's vehicles skid across the highway and in front of the semi after the initial impact. *Id.* Tolen later crossed back to the east side of I–465 South with another individual, and they found Powell lying against the concrete median wall. Tolen testified, "To the best of my knowledge, [Powell] wasn't 10 or 15 feet from where his van originally was." *Id.*, p. 26.

When Tolen was questioned as to the length of time which passed from when Powell's van initially went into a spin and then came to a rest until the second collision occurred, he estimated that five to ten minutes might have passed, but that he was really unsure of the length of time. *Id.*, p. 31. As for the amount of time which passed from when Tolen left Powell to radio for help until the second collision occurred, Tolen testified "that was just a matter of only 2 or 3 minutes for that. By the time it took me to get across the interstate and to explain to React what had happened then—you know, they were right on the radio, so it wasn't any wait there or anything." *Id.*, pp. 41–42.

## II. Discussion

Both Auto–Owners and Powell have moved for summary judgment on the issue of whether Powell was an insured as this term is defined for purposes of the underinsured motorist coverage provided by Schaller Trucking's policy with Auto–Owners. The term "insured," as it is relevant here, is defined in Section IIIA(2)(b) of this policy as "Any person while in, upon, entering or alighting from an automobile to which coverage A [bodily injury liability] of this policy applies...." It is the application of this definition which is at issue.

Powell, however, offers an argument which would obviate the necessity of applying this definition. Auto–Owners, in response to a Request for Admissions made by Powell in a suit previously filed in the Hamilton County Circuit Court (of Indiana) by Powell against Powers and Auto–Owners, admitted that Powell was an insured under the policy with respect to the underinsured motorist provision. On July 5, 1989, that state court lawsuit was dismissed, pursuant to a stipulation between the parties, with prejudice as to Powers and without prejudice as to Auto–Owners. Powell argues that Auto–Owner's prior admission is binding in this lawsuit and resolves the issue of coverage.

Auto–Owners claims that it discovered that the admission was premature after taking Powell's deposition on September 5, 1989 (for purposes of an arbitration claim filed by Powell on June 5, 1989). Auto–Owners advances various reasons why this prior admission should not be binding against it in this litigation. It argues that Indiana trial rules limit the effect of an admission to the pending litigation only, or alternatively that under Indiana law, Auto–Owners should be allowed to withdraw this admission.

State law should be used to determine the preclusive effect to be given to Auto–Owners' prior admission. *Morris v. Spratt,* 768 F.2d 879, 882 (7th Cir.1985),

*Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir.1982). Indiana Trial Rule 36(B) provides: "Any admission made by a party under [Trial Rule 36] is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding." The pending action in connection with which the admission was made has, as noted above, been dismissed, and Trial Rule 36 indicates quite clearly that the admission should have no preclusive effect against Auto–Owners in this litigation. While Powell argues that the issues are the same as those raised in the state court proceedings (an assertion which is incorrect, as many of the controversies between the parties have been resolved in arbitration, and the only issue in this suit is the existence of coverage), the fact that the issues may be related does not overcome the plain language of Trial Rule 36(B), which limits the use of admissions to the pending actions only.

Although the limits specified in Trial Rule 36(B) have resolved the issue, the court notes in the alternative that the other arguments raised by Powell are similarly unavailing. Powell argues that an Indiana court would not allow withdrawal of the admission because it was not made out of excusable neglect. Powell advances no authority in support of this position, and the court declines to do this research for him.

Powell does cite a case, *Stewart v. Stewart,* 506 N.E.2d 1132, 1133 (Ind.App.1987), which describes a test for when a party may withdraw an admission under Trial Rule 36(B). That two-prong test provides for the withdrawal of an admission when: 1) the presentation of the merits would be subserved thereby (which is certainly the case here, as there would be no consideration of the merits if the admission were not withdrawn) and 2) the party obtaining the admission does not satisfy the court that it would be prejudiced by the withdrawal of the admission. Powell has not demonstrated to the court that it would be prejudiced by the withdrawal of the admission. There is no argument that Powell does not now have a fair opportunity to litigate the issue of coverage in this action. What Powell does argue is that he was prejudiced in that, by dismissing his state court action, he lost the opportunity to raise the punitive damage claim he had filed, as such a claim could not be raised in the arbitration which followed. However, the punitive damage claim was lost as a result of the dismissal of the state court action, and this claim will not be revived by the court's refusal to allow withdrawal of the admission. The prejudice that Powell is required to demonstrate must stem from the withdrawal of the admission, and Powell has not shown how his position will differ if the admission is withdrawn.

What Powell seems to be arguing is that Auto–Owners should be estopped from withdrawing the admission because Powell relied on that admission of coverage when he agreed to the dismissal of his state court lawsuit. Indeed, Powell implies that Auto–Owners engaged in a deliberate strategy of getting Powell to dismiss the state court suit and then raising the coverage issue in a later federal court proceeding when a punitive damage claim would purportedly be time-barred. Reply to Auto–Owners Insurance Company's Memorandum, p. 3. The flaw in this estoppel-type argument is apparent in the Settlement Agreement and Mutual Release (submitted with plaintiff's Objection to Motion of Defendant, Sean R. Powell, for Summary Judgment and attached to affidavit of Michael K. Irwin) which Powell entered into with Auto–Owners and Powers. Paragraph five of this Settlement Agreement specifically exempts from the scope of the releases given "any declaratory judgment action to determine insurance coverage." The language of this settlement agreement thus precludes any argument that Powell's decision to dismiss was conditioned on an admission of coverage. Moreover, neither this agreement, nor the Stipulation of Dismissal filed with the Hamilton County Circuit Court on June 28, 1989, nor the Order of dismissal entered by that court on July 5, 1989, made any mention of this admission. Powell has thus offered no evidence that he detrimentally relied on the admis-

sion nor that he would be prejudiced were the admission to be withdrawn.

■ Having declined to hold Auto–Owners bound by its prior admission, the court must now apply the "in, upon, entering or alighting from" definition of an insured to the facts of this case. Powell does not specify which of the listed terms he intends to rely upon. It appears from Defendant's Memorandum in Support of Motion for Summary Judgment that Powell claims to have been alighting from the van at the time of the accident.

Both parties have brought to the court's attention Indiana cases construing similar definitions in insurance policies. In *United Farm Bureau Mutual Ins. Co. v. Pierce*, 152 Ind.App. 387, 283 N.E.2d 788 (1972), while the court indicated that "the 'entering or alighting' cases required an intent coupled with an overt act necessary to enter or exit a vehicle," it noted that in contrast "[t]he majority of the 'in or upon' cases appear to rely primarily upon physical support." *Id.* 283 N.E.2d at 790. Using a physical contact rule, there is no evidence to support the contention that Powell was "in" or "upon" the van at the time of the accident.

While *Pierce* relied upon a rule based on physical contact, in *Michigan Mut. Ins. Co. v. Combs*, 446 N.E.2d 1001, 1005 (Ind.App. 1983), the court apparently supplemented that approach with an examination of the relationship between the claimant and the vehicle. In *Combs*, the claimant was neither an operator nor a passenger of the Volkswagen at issue but was instead leaning on the rear bumper of the car and working on its engine. The court looked at various interpretations of the word "upon," and also recognized the principle of interpreting ambiguous insurance contracts in favor of coverage. The court held that either a physical contact or a relationship approach (asking whether the claimant was an operator or a passenger) should be used, based on which of the two would allow coverage. *Id.*, p. 1007. While Powell was the operator of the van and thus had a relationship with it, there is no evidence that he was so close as to be "in" or

"upon" the van. In the cases cited by the *Combs* court where coverage was found based on the relationship between the claimant and the car and despite the absence of physical contact, the claimant continued to remain with the vehicle at the time of the accident. For example, in *Wolf v. American Cas. Co.*, 2 Ill.App.2d 124, 118 N.E.2d 777 (1st Dist.1954), the plaintiff was struck while he was returning to his automobile and reaching in for a pencil to write down license information. By contrast, the evidence is clear that although Powell had once walked from and returned to his van, he was walking away from and had his back to the van at the time of impact. To say in such a situation that his relationship qualified him as being "in" or "upon" the van would be to drain those terms of meaning, and it would also apparently swallow up those situations in which a person could be said to be entering into or alighting from a vehicle. As the *Combs* court noted, "courts may not construe words in a contract in such a way as to render them meaningless." *Id.*, p. 1004. The facts simply do not indicate the sort of closeness to the van and continued relationship with the van which would enable this court to say that Powell was "in" or "upon" it.

Having determined that Powell was not "in" or "upon" the van at the time of the accident, the remaining question is whether Powell was "entering into" or "alighting from" the van at the time of the accident. Powell apparently does not contend that he was entering the van at the time of the accident. The facts indicate that he was headed away from the van. Indeed, Powell's argument is based in large part on the argument that he was attempting to reach safety. The court will thus examine whether Powell was "alighting from" the van at the time of the accident.

A comparison of the facts in this case with those in *State Farm Mut. Auto. Ins. Co. v. Barton*, 509 N.E.2d 244 (Ind.App. 1987), is particularly useful in analyzing whether Barton was "alighting from" the vehicle. In *Barton*, the claimant was a passenger in a vehicle which crashed into a utility pole. The pole broke and fell on the

car, with two wires apparently hanging near the passenger side of the auto. The claimant and the others in the car exited and made it safely to the nearby roadway. However, the claimant returned to the vehicle with the driver in an attempt to push the car. When the auto would not move, the claimant started back to the road way but tripped on an electrical wire on the way and severely burned himself. The court rejected the claimant's argument that he was "alighting from" the vehicle at the time of the accident. The court noted that " 'entering [into]' and 'alighting from' are processes which either end or begin when the actor is inside the vehicle." *Id.*, p. 248. In *Barton*, the court found that the claimant had completed the process of "alighting from" the vehicle when he had walked to the roadway. *Id.* In this case, Powell completed the process of "alighting from" the vehicle after he had walked to the south to clear his head. His return to the van could not be said to be a continuation of the process of "alighting from" the van. Since the claimant in *Barton* did not intend to re-enter the vehicle when he came back to try and push the vehicle, the court found that he could not have been "alighting from" the vehicle at the time he was injured when walking away, as the process of "alighting from" a vehicle can only begin with a person inside the vehicle. *Id.* Likewise in this case, although Powell did approach the van after having walked away, he never manifested an intent to re-enter the van, and like the claimant in *Barton*, he could not be said to have been "alighting from" the van when he was hit while walking away.

In *Miller v. Loman*, 518 N.E.2d 486 (Ind. App.1987), another case in which insurance coverage was at issue, the court gave the following analysis:

We believe the proper determination of whether an individual is "alighting from" or "getting out of" an automobile requires the examination of several factors which may establish the existence of a relationship between the individual and the insured automobile. These factors include: the distance between the accident and the automobile; the time sepa-

rating the accident and the exit from the automobile; the individual's opportunity to reach a zone of safety; and the individual's intentions in relation to the automobile. These factors will, of course, have greater or lesser weight depending upon the circumstances of each individual case. There may be instances in which one of the factors may be determinative, such as where the accident occurs at such a great distance from the automobile as to render it unreasonable to assume the process of alighting had not been completed.

*Id.* at 491–92.

Applying these factors to the present case, the testimony of both Powell and Tolen indicates that Powell was out of his van for two minutes and perhaps more before the second accident occurred. The amount of time that passed may also be measured by Tolen's acts. Tolen had time to cross the freeway and radio for help before the second accident occurred. These measures of time all indicate that an appreciable amount of time passed before the second accident took place. This certainly is not a case where Powell had just exited the vehicle when the second collision happened.

As for the distance between Powell and the vehicle, Powell's testimony indicates that he was walking away from the front of the vehicle and headed towards the median at the time of the second accident— hardly testimony which indicates an incomplete process of alighting from the vehicle. Perhaps more appropriately, however, the distance to be considered should include Powell's walk south and then his return to the van. The fact that Powell was able to walk away and back and then away again refutes the idea that he was in the process of "alighting from" the van, or that he was so close to the van as to be deemed still in that process.

The court also finds that Powell had an opportunity to reach safety, as demonstrated by the fact that he walked south and away from the van after having exited it. Powell not only walked away from the van, but he also reflected and headed back towards the van. There is, however, no evi-

dence or argument that Powell intended to re-enter the van. For Powell, having once walked away from the van, to head back to the van and then walk away from it once more shows that "he had embarked upon a 'course of conduct ... entirely distinct for acts reasonably necessary to make an exit from the car.'" *Id.* at 492 (citation omitted). To say that such actions are part of the process of "alighting from" a vehicle is to stretch that concept too far. Having applied the factors discussed in *Miller* to this case, the court concludes that Powell was not "alighting from" his van at the time of the second accident.

## III. Conclusion

For the above reasons, the court finds that Powell is not entitled to coverage under the underinsured motorist provision of the policy issued by Auto–Owners. Accordingly, the plaintiff's motion for summary judgment is granted, and Powell's motion for summary judgment is denied.

It is so ORDERED.

## JUDGMENT

Pursuant to the court's entry of this date, declaratory judgment is hereby entered in favor of the plaintiff Auto–Owners Insurance Company and against the defendants in this cause. Each party is to bear its own costs.

It is so ORDERED.