Steve MILLER, Appellant,

v.

George LOMAN, John C. Perkinson, and Allstate Insurance Company, Appellees.

No. 41A04–8703–CV–79.

Court of Appeals of Indiana, Fourth District.

Dec. 14, 1987.

Rehearing Denied Feb. 2, 1988.

Douglas N. Ryan, George Clyde Gray, Gray Robinson Eckert & Ryan, Indianapolis, for appellant.

John W. Hammel, Yarling Robinson Hammel & Lamb, Indianapolis, for appellees.

MILLER, Presiding Judge.

Steve Miller was hit by an automobile driven by George Loman, an uninsured motorist, after Miller had exited a truck owned by John C. Perkinson. Miller brought suit against Loman, Perkinson, and Perkinson's insurer, Allstate Insurance Company. Allstate filed a motion for summary judgment which the trial court granted, finding Miller's accident outside the scope of the Uninsured Motorist provision of Perkinson's policy. Miller appeals, and we affirm.

## FACTS

The facts most favorable to Miller, the non-moving party, reveal that, on December 20, 1983, John and Laura Perkinson were taking their friends, Steve and Judi Miller, to the Indianapolis Airport in the Perkinson's Chevrolet pickup truck. John drove the truck, the two women sat in the middle, and Steve sat nearest the passenger side door. The truck, traveling down West Raymond Street, hit a pothole dislodging the muffler from the truck. The muffler fell off at a point where West Raymond is a four lane street with a three foot wide median divider. Perkinson continued on until he reached a place where he could turn the truck around. He then stated he was going to go back and get the muffler out of the roadway so he could retrieve it on the way home. He returned to where the muffler fell off, and turned his truck into a turn lane cut into the median. He stopped the truck and Miller volunteered to retrieve the muffler. Perkinson warned it would be hot and told him not to pick it up, and directed him to kick it off the side of the road so that Perkinson could retrieve it on the return trip from the airport.

Miller got out of the truck, walked behind it, and crossed over two lanes of the road to the location of the muffler. He was about thirty feet from the truck and a foot or two from the berm when he reached the muffler. As he kicked it off the road, he was hit by a car driven at approximately forty-five to fifty miles per hour by George Loman, an uninsured motorist. Miller was thrown over the car to the side of the road. As a result of the accident, he suffered multiple fractures in his arm, a shoulder dislocation, a compound fracture of his right thigh, and multiple fractures of his lower leg.

## DECISION

Miller presents two questions for review: 1) was Miller entitled to coverage under the policy because he was "in, on, getting into, or getting out of" the insured vehicle at the time of the accident and; 2) was Miller entitled to coverage because he was en-

gaged in the maintenance, use, and loading of the insured vehicle?

When we review a summary judgment, we will affirm only if there are no conflicts as to any material facts or as to any of the material inferences which can be drawn from the facts. *Joseph v. Calvary Baptist Church* (1986), Ind.App., 500 N.E.2d 250. We take all allegations of the non-moving party as true, and we construe all depositions, admissions, answers to interrogatories, and testimony in favor of the non-moving party. *Id.* If the moving party is entitled to judgment as a matter of law, we will affirm. Here, if the facts most favorable to Miller will not support the conclusion that he was an occupant of the truck, we will affirm.

### ISSUE I

■ The uninsured motorist coverage purported to extend protection to "[a]ny person while in, on, *getting into or out of* an automobile." Allstate contends this language is restrictive and limits recovery to accidents which occur near the automobile shortly after the injured party exited it. Miller was run over approximately thirty feet from Perkinson's truck, and Allstate contends he was outside the area in which he was subject to risks resulting from his exit from the automobile. Miller, on the other hand, argues it is improper for the court to focus only on the time and distance separating the accident from the automobile. He concedes that time and distance may be considered, but that the time and distance factors should not be the only indicia of a relationship between the injured party and the automobile. While we find support for both positions in out of state authorities, we must conclude time and distance are not the sole indicia of a relationship between the injured party and the car under our law. However, we also must conclude that Miller was not entitled to coverage under the facts presented here.

Several cases from out of state jurisdictions support Allstate's argument that the relationship between the injured party and the insured automobile must be close in time and distance. In *Crear v. National*

*Fire & Marine Insurance Co.* (1985), La. App., 469 So.2d 329, decedent was a senior citizen who accepted transportation, in a community service van, to the local post office. The decedent exited the van with the aid of the driver, who walked him to the end of the van. As the decedent crossed a drive-through lane, he was hit by a car which was backing out of a parking space. He was approximately halfway across the drive-through lane when he was hit. The court denied coverage, stating:

"In *Day v. Coca Cola Bottling Corp., Inc.*, 420 So.2d 518 (La.App. 2d Cir.1982), this court addressed the meaning and scope of the term 'while alighting from' in an automobile policy's UM coverage provisions. We held that it is not physical contact with the vehicle that serves as a basis for determining whether a person is injured while alighting from a vehicle, but the *relationship* between the person and vehicle. The relationship is turn involves two separate factors: time and distance. *When the time and distance factors are no longer proximate to the risk to which a person exposes himself while alighting from a vehicle, coverage ceases. The person at some time and at some distance 'loses' the UM protection.*" *Id.* at 336–337 (emphasis added).

The California Court of Appeals reached a similar result in *Menchaca v. Hiatt* (1976), 59 Cal.App.3d 117, 130 Cal.Rptr. 607. In *Menchaca*, the plaintiff was struck by a car while crossing the street to get into her cohabitant's automobile after seeing a movie. Although the plaintiff stated she intended to proceed directly to the car and enter it, the court found no coverage because "her injuries did not result from her being in close proximity to the car...." *Id.* at 129, 130 Cal.Rptr. at 614.

In *Breard v. Haynes* (1981), La.App., 394 So.2d 1282, the plaintiff was a passenger in a car which was involved in an accident. He and the driver left the car and stood near the car of an investigating officer. There, he was struck by a van. The court held any recovery relied on a physical relationship between the plaintiff and the in-

sured vehicle. The court found no such relationship because "the Cook vehicle was approximately seventy feet from where the second accident occurred; there was approximately fifteen minutes elapse in time between the time of the first accident and the second accident." *Id.* at 1284.

Several courts have denied coverage under the uninsured motorist provisions while purporting to apply a test which takes more than time and distance into account. The Florida District Court of Appeals, for instance, has adopted a test which examines the intent of the injured party in determining his relationship to the insured vehicle:

> "On the other hand, there must be a limit to the activity that can be said to be a part of 'alighting from.' Cf. *Rice v. Allstate Insurance Company,* 32 N.Y.2d 6, 342 N.Y. S.2d 845, 295 N.E.2d 647 (1973); and *Carta v. Providence Washington Indemnity Company,* 143 Conn. 372, 122 A.2d 734 (1956). We think that a rational limit to the activity that may be said to be encompassed within the term 'alighting from' is the time and place at which the insured shows an intention, evidenced by an overt act based on that intention, to undertake a new direction or activity. See *Carta v. Providence Washington Indemnity Company, supra* [122 A.2d] at 737. *See also Testone v. Allstate Insurance Company,* 165 Conn. 126, 328 A.2d 686, 691 (1973); and *Lautenschleger v. Royal Indemnity Company,* 15 N.C.App. 579, 190 S.E.2d 406 (1972); and cf. *Nelson v. Iowa Mutual Insurance Company,* 163 Mont. 82, 515 P.2d 362, 364 (1973)."

*Fidelity & Casualty Co. of New York v. Garcia* (1979), Fla.App., 368 So.2d 1313, 1315; *accord State Farm Mutual Auto Insurance Co. v. Yanes* (1984), Fla.App., 447 So.2d 945.

In *Garcia,* the court found that crossing a street was an activity distinct from alighting from a vehicle, and the court accordingly denied coverage under the policy. 368 So.2d at 1315. Our reading of *Garcia* and *Yanes* convinces us that the factors of time and distance were preeminent in lead-

ing the Florida courts to conclude that particular overt acts evinced an intention to undertake a new direction or activity.

Several jurisdictions have engaged in a more complex analysis of this problem, and have chosen to look at more than mere time and distance in order to determine whether an injured party is covered by the insurance. In *Government Employees Insurance Co. v. Keystone Insurance Co.* (E.D. Penn.1977), 442 F.Supp. 1130, the plaintiff was injured when he exited a friend's car to assault the driver of a second car. The driver of the second car ran over the plaintiff as he approached. The court, granting coverage pursuant to its interpretation of Pennsylvania law, stated:

> "The common thread of reasoning which permeates this line of cases is well illustrated by the following quote from the *Allstate* case, *supra* [*Allstate Insurance Company v. Flaumenbaum* (1970) 62 Misc.2d 32, 308 N.Y.S.2d 447]:
>
>> '... a person has not ceased 'occupying' a vehicle until he has severed his connection with it—i.e., when he is on his own without any reference to it. If he is still vehicle-oriented he continues to 'occupy' the vehicle.' 62 Misc.2d at 46, 308 N.Y.S.2d at 462.

We find this reasoning persuasive, and in light of the lack of Pennsylvania authority directly on point, we adopt it as our own." 442 F.Supp. at 1133.

The court found the plaintiff had abandoned his relationship to the car and, consequently, had completed the act of alighting when he advanced on the second driver's car with the intent to assault the driver.

The Georgia Court of Appeals, in *State Farm Mutual Insurance Co. v. Holmes* (1985), 175 Ga.App. 655, 333 S.E.2d 917, was called upon to decide whether a driver, who was swept away by flood waters after exiting his car, was "alighting" from the vehicle when he drowned at least one hundred yards from the vehicle. The car had come partly off the roadway, and was in danger of being swept away by the flood. The driver, in an effort to reach safety, left the car and was swept away by the current when he was in waist-deep waters some

three to six feet from the car. He finally disappeared under the flood waters one hundred yards from the car. Upon these facts, the court held the driver remained in the process of alighting because he had not been able to reach or be removed to a "neutral zone", which the court defined as an area of safety. *Id.* at 657, 333 S.E.2d at 918.

Finally, in *Joins v. Bonner* (1986), 28 Ohio St.3d 398, 504 N.E.2d 61, the plaintiff, a minor, was injured in a car accident after he exited a car owned by a co-worker of his mother. The plaintiff had to walk around the car and cross a street to reach his day care center. As he neared the opposite curb, he was hit by a car. The court found he was alighting for two reasons. The court first noted:

"In this case the passenger, Brian Joins, exited the passenger side of the insured automobile, crossed in front of this automobile, and in proceeding to cross the street to the opposite curb, was struck by an uninsured vehicle at a point about seven feet from the opposite curb. *When, as here, a passenger who exits an insured vehicle and proceeds immediately to cross the street in front of such car to the opposite curb and, before reaching the opposite curb, is struck and injured by an uninsured vehicle, such passenger is 'alighting from' such insured vehicle within the meaning of such terms in the uninsured motorist coverage provision of the insurance policy. The course of conduct of 'alighting from' an automobile includes reaching the opposite side of the street safely since it is a course of conduct reasonably incident to exiting and alighting from an automobile. Crossing the street to a position of safety is within the time framework which could be reasonably expected. Kantola v. State Farm Ins., supra* [ (1979) ], 62 Ohio Misc. [11] at 13, 405 N.E.2d 744; *Whitmire v. Nationwide Mut. Ins. Co.* (1970), 254 S.C. 184, 174 S.E.2d 391. *This principle recognizes the fact that a person is not 'finished' with exiting a vehicle until he or she reaches a place of safety on the side of the street or road to which he or she is proceeding." Joins,* 28 Ohio St.3d at 400, 504 N.E.2d at 63 (emphasis added).

The court continued:

"In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons 'occupying' insured vehicles, the determination of whether a vehicle was occupied by the claimant at the time of an accident should take into account the immediate relationship the claimant had to the vehicle within a reasonable geographic area. *Robson v. Lightning Rod Mut. Ins. Co., supra,* [ (1978) ] 59 Ohio App.2d [261], 264, 393 N.E.2d 1053. Here the passenger, Brian Joins, was within a reasonable geographic area of the vehicle from which he had exited and therefore was in the process of 'alighting from' it. 'Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer.' *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 313 N.E.2d 844 [68 O.O.2d 56], syllabus." *Joins,* 28 Ohio St.3d at 401, 504 N.E.2d at 63–64.

We are thus faced with conflicting lines of out of state authority. When we are faced with conflicting foreign authority it is our duty to decide which authorities comport with Indiana law. In this case we find those authorities which have looked to more than mere time and distance in determining whether an injured party was "alighting from" or "getting out of" an automobile to be the better reasoned and, furthermore, more consonant with Indiana authority.

Recently, the Second District was called upon to interpret an uninsured motorist provision which extended coverage to those who were "alighting from" the insured automobile. In that case, *State Farm Mutual Automobile Insurance Co. v. Barton* (1987), Ind.App., 509 N.E.2d 244, the teenage plaintiff was a passenger in a friend's automobile. The friend intentionally fishtailed the car, causing it to collide with a utility pole. The collision caused some live

electrical wires to fall near the passenger side of the car. The plaintiff exited the car on the driver's side because of the downed power lines and made it safely to the roadway. After a short time, the plaintiff returned to the car to push it free. When the attempt was unsuccessful, he walked away and, about three feet from the car, he accidently touched one of the downed lines and was seriously injured. Judge Shields held the plaintiff not to be covered by the policy because:

> "[the plaintiff] exited the automobile immediately after it hit the utility pole and walked to the safety of the roadway. At this point, [the plaintiff] and his fellow occupants had accomplished their exit from the vehicle and the process of 'alighting from' was complete." *Id.* at 248.

With respect to the definition of "alighting from", Judge Shields cited several foreign authorities:

> "*See Carta v. Providence Washington Indemnity Co.* (1956), 143 Conn. 372, 378, 122 A.2d 734, 737 ('A person is not in the process of alighting if, at the time, he has completed all acts normally performed by the average person in getting out of an automobile under similar conditions and if he has embarked upon a course of conduct entirely distinct from acts reasonably necessary to make an exit from the car.'); *Stoddard v. 'AID' Insurance Co. (Mutual)* (1976), 97 Idaho 508, 510, 547 P.2d 1113, 1115 (insured is not 'occupant' in terms of 'alighting from' the vehicle if he has completed the acts which are normally performed in getting out of the automobile); *Kantold v. State Farm Ins. Co.* (1979), 62 Ohio Misc. 11, 405 N.E.2d 744, 745 (to come within the scope of a medical payment clause covering persons 'alighting from' the school bus, the 'injury must be within a reasonable time incident to making an

exit out of and away from the vehicle'); *Whitmire v. Nationwide Mutual Insurance Company* (1970), 254 S.C. 184, 191, 174 S.E.2d 391, 394 (the act of alighting is not completed where the actor is 'still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions')." *Barton, supra* at 248 n. 6.

It is true that Indiana cases, including *Barton,*[1] have found time and distance to be important factors in determining the injured party's relationship to the insured vehicle, but the cases do not prohibit consideration of other relevant criteria. In *Barton,* for example, Judge Shields did not focus merely on the time and distance between the plaintiff and the automobile in deciding he was not entitled to coverage. Instead, Judge Shields found the fact the plaintiff had reached a place of safety to be at least as important in determining when the process of "alighting from" and, consequently, the insurance coverage, terminated.

█ We believe the proper determination of whether an individual is "alighting from" or "getting out of" an automobile requires the examination of several factors which may establish the existence of a relationship between the individual and the insured automobile. These factors include: the distance between the accident and the automobile; the time separating the accident and the exit from the automobile; the individual's opportunity to reach a zone of safety; and the individual's intentions in relation to the automobile. These factors will, of course, have greater or lesser weight depending upon the circumstances of each individual case. There may be instances in which one of the factors may be determinative, such as where the accident occurs at such a great distance from the automobile as to render it unreasonable

---

1. In both *United Farm Bureau Mutual Insurance Co. v. Pierce* (1972), 152 Ind.App. 387, 283 N.E. 2d 788 and *Michigan Mutual Insurance Co. v. Combs* (1983), Ind.App., 446 N.E.2d 1001, the courts were called upon to determine whether an individual engaged in activity outside the automobile was "occupying" it, under polices which defined "occupying" as being "in or upon,

entering into, or alighting from" the automobile. In *Pierce,* the plaintiff was attempting to push the car out of the snow; in *Combs,* the plaintiff was working on the rear mounted engine with his knees resting on the rear bumper. Both cases held there was coverage by construing the word "upon" to encompass physical contact with the covered vehicle.

to assume the process of alighting had not been completed.

Here, the trial court, by granting summary judgment for Allstate, determined there was no material issue of fact remaining with respect to coverage. We agree. It is undisputed Miller was thirty feet away from the truck, kicking the muffler, when Loman hit him. He testified he never intended to do anything but kick the muffler off the road and return to the truck; he never intended to reach a zone of safety. It is therefore clear he had embarked upon a "course of conduct (kicking the muffler off the road) entirely distinct from acts reasonably necessary to make an exit from the car." *Carta, supra,* 143 Conn. at 378, 122 A.2d at 737. We find the court did not err on these grounds.[2]

### ISSUE II

Miller next argues he is an "insured person" entitled to coverage under the policy because he was using the truck and was involved in the loading, unloading, or maintenance of the truck at the time of the accident. Though he does not explicitly explain how he was loading or unloading the insured vehicle at the time of his injury, we assume he considers the act of kicking the muffler off the road an act preparatory to Perkinson retrieving the muffler and loading it on the truck on the return trip from the Airport. We further assume he considers kicking the muffler an act of maintenance, since he was attempting to preserve the muffler so that Perkinson could reinstall it on the truck.

Miller's argument is flawed in several respects. We must first note that Miller was not using the car under the insurance contract as interpreted in the light of Indiana precedent. Under Indiana law,

"use" of a vehicle means actively "that assists in propelling or directing a vehicle to a place where it ceases to be employed." *Protective Insurance Co. v. Coca–Cola Bottling Co.* (1984), Ind.App., 467 N.E.2d 786, 790. Even while he was still in the truck, Miller did not engage in this kind of activity. He certainly did not engage in such activity when he was thirty feet from the truck.

Furthermore, any connection between Miller's act of kicking the muffler and loading or unloading the truck is too unsubstantial to support coverage under the policy. Even if he had not been hit and Perkinson—(after bidding bon voyage to Miller and his wife at the airport)—had retrieved the muffler as planned, the delay in time between the two actions would have been so great as to sever any connection between the two. Miller's act of kicking the muffler was entirely separate from its planned retrieval and return to the truck and did not constitute loading or unloading of the truck.

Finally, we note Miller was not involved in maintenance of the car when he was injured. In order to be involved in maintenance of a vehicle, one must be working on it in some manner. The authorities construing provisions providing coverage for injuries arising out of maintenance of a vehicle are virtually unanimous in holding the injury must be due to the maintenance. *See, e.g., Kurlak v. United Services Automobile Assn.* (1978), Fla. App., 362 So.2d 463; *Bituminous Casualty Corp. v. North River Insurance Co.* (1977), 46 Ill.App. 654, 5 Ill.Dec. 60, 361 N.E.2d 60; *Walsh v. National Indemnity Co.* (1986), 80 N.C.App. 643, 343 S.E.2d 430. Any connection between Miller's injuries

---

**2.** Miller also asserts he is entitled to coverage because he was hit while he was kicking the muffler and, consequently, he was "on" Perkinson's truck because the muffler was part of the truck. This argument is, to put it mildly, flawed. Once the muffler fell off the truck it was no longer part of the truck. If we were to accept Miller's argument, insurers would not only insure automobiles, but also the myriads of parts, from hubcaps to mufflers, which litter our roads, because each derelict part would

remain a part of the insured vehicle from which it fell. Such an absurd result is warranted by neither our Uninsured Motorist statute, IND. CODE 27-7-5-2 *et seq*, nor the insurance contract under which Miller claims coverage here. In any event, our courts have held that an automobile part is not an automobile. *Blankenbaker v. Great Central Insurance Co.* (1972), 151 Ind.App. 693, 281 N.E.2d 496. Thus, he was not in physical contact with the truck, and does not qualify under *Pierce* and *Combs.*

and eventual maintenance of the truck is simply too farfetched to bring him within the policy. Miller cannot recover on this ground.

We have found no reversible error on the part of the trial court. We therefore affirm its decision and judgment.

Affirmed.

RATLIFF, C.J., and CONOVER, J., concur.