STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Michael Cancel, Appellants–Defendants,

v.

Francisco GUTIERREZ, Appellee–Plaintiff.

No. 45A03–0408–CV–368.

Court of Appeals of Indiana.

March 30, 2006.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale, Indianapolis, Richard M. Davis, Jack A. Kramer, Kevin G. Kerr, Hoeppner Wagner & Evans, Valparaiso, Robert D. Brown, Spangler, Jennings & Dougherty, Merrillville, for Appellants.

Beth L. Brown, Timothy F. Kelly & Associates, Dyer, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Francisco Gutierrez filed a complaint alleging negligence against Michael Cancel and bad faith and breach of contract against State Farm Mutual Automobile Insurance Company ("State Farm"). A jury found in favor of Gutierrez and returned verdicts against Cancel in the amount of $160,000 and against State Farm in the amount of $17,221.31 for breach of contract, $350,000 for bad faith, and $500,000 in punitive damages. State Farm and Cancel appeal and present several issues for our review:

1. Whether the trial court abused its discretion when it denied Cancel's and State Farm's motions for bifurcation.

2. Whether the trial court erred when it denied State Farm's motions for judgment on the evidence regarding Gutierrez's bad faith and breach of contract claims.

3. Whether the trial court abused its discretion when it admitted certain exhibits and testimony into evidence at trial.

We affirm in part, reverse in part, and remand for a new trial on Gutierrez's negligence claim against Cancel.

## FACTS AND PROCEDURAL HISTORY

On March 5, 2000, Cancel borrowed Gus Guerrero, Jr.'s pickup truck to transport a playhouse measuring approximately five feet by six feet and weighing between 400 and 900 pounds. Gutierrez, Floyd Turner, and some other men helped Cancel load the playhouse onto the truck and fasten it with a chain. Cancel then drove the truck toward his home, and Gutierrez and Turner accompanied him during the trip.

At some point, the playhouse fell off the truck and onto the roadway. Accordingly, Cancel stopped the truck on the shoulder of the road, and Gutierrez and Turner exited, intending to retrieve the playhouse and load it back onto the truck. But while Gutierrez was standing next to the truck, Cancel drove the vehicle in reverse and the passenger door, which had been left open, struck Gutierrez in the back and knocked him to the ground.[1]

Gutierrez sustained injuries, including an avulsion of the patellar tendon of the right knee, which required surgery. Following surgery, Gutierrez wore a cast on his right leg for one month. His physician prescribed physical therapy, but Gutierrez could not afford that treatment, since he lacked health insurance. During his rehabilitation, Gutierrez fell while he was at home and reinjured his right knee. His physician fitted him with a new cast, which he wore for almost two months. On August 20, 2000, his physician released him to return to regular activity. Gutierrez's physician ultimately gave him an impairment rating of 7.5% of the whole person.

On March 9, 2000, Cancel had reported the accident to Guerrero's insurance company, State Farm. Under the terms of the applicable State Farm policy, medical payments coverage is available to any person who sustains bodily injury "while occupying" the insured vehicle. Exhibit 1 at 7. The policy defines "occupying" as "in, on, entering or alighting from." *Id.* at 2.

State Farm's initial fact entry, dated March 9, 2000, reads: "CANCEL ... ADVISED THEY WERE CARRY[ING] A SHED AROUND 400 POUNDS. IT CAME LOOSE AND FELL OFF THE TRUCK. PASS. GOT OUT OF THE TRUCK AND LEFT THE PASSENGER DOOR OPENED. DRIVER STARTED TO BACK-UP [WHEN] THE DOOR STRUCK HIM. PASSENGER WENT BY AMBULANCE TO ST. CATHERINE'S." Exhibit 2 at 15. On March 13, 2000, after talking to Cancel and Guerrero, State

---

1. There is conflicting evidence regarding how long Gutierrez had been out of the truck before he was struck and what his actions were during that time. There is some evidence that Gutierrez had removed the chain from the rear axle prior to being struck. And Gutierrez gave conflicting statements on whether he was entering the truck at the time he was struck. Regardless, the undisputed evidence shows that Gutierrez was out of the truck for no longer than one minute. *See, e.g.,* Brief of Appellant State Farm at 50 ("Gutierrez estimated the time between when he got out and when he was hit was between 30 and 50 seconds."). Cancel testified that Gutierrez had been out of the truck for approximately five seconds before he was struck.

Farm claims adjustor Tonya Bolden made an entry stating that "[Gutierrez] was not in the [insured vehicle] at time of loss. [Medical payments coverage] not applicable for [Gutierrez]." *Id.* at 14. On March 15, 2000, after talking to Gutierrez on the telephone, Bolden made an entry stating that Gutierrez "was walking towards the dollhouse" and "was getting ready to turn around to . . . tell [Cancel] to take it easy with the [truck]" when he was struck by the door and knocked to the ground. *Id.* at 13.

In a letter to State Farm dated April 12, 2000, Gutierrez's attorney stated in relevant part:

Francisco Gutierrez was "occupying" the insured vehicle at the time of the accident and you are required to take into account the immediate relationship of our client [ ] to the insured truck within a reasonable geographic area. The shed/dollhouse was obstructing the middle of the one lane westbound lane of Michigan Avenue and had to be reloaded on the truck or moved from the center of the lane as it was a danger to any other vehicle proceeding westbound. The act of "alighting" is not completed where the actor is still engaged in the completion of those acts reasonably to be expected from one getting out of a truck in similar conditions. Francisco after getting out retrieved the chain and threw it back into the body of the truck and then was going to proceed to help with the shed/dollhouse and then get back into the truck when he was negligently struck by the permissive user[ ] while backing the truck and when he could not get far enough north of the path of the truck before it struck him. All of the above occurred in an almost continuous time span from the moment our client got out of the truck to help with what had just occurred and my client's intention was to get back into the truck so that the shed could be delivered to Cancel's home.

Francisco Gutierrez was not a pedestrian, he was a passenger and/or occupant of the truck at all times in question under the case law.

State Farm is liable for all of his damages that have resulted from the accident and you are required to pay all of his medical bills under your medical pay coverage as well.

*Id.* at 51–52. In a second letter dated April 18, 2000, Gutierrez's attorney advised State Farm in relevant part:

Francisco Gutierrez was clearly alighting from your insured['s] truck when he was injured. Gutierrez had left Michael Cancel's truck to reload a shed that had fallen off the truck into the middle of Michigan Avenue. Gutierrez was at the rear of the truck, working to untangle a chain from around the rear axle, when Cancel backed into him. Gutierrez had been out of the truck only a few seconds, and had no warning that Cancel would back the truck into him, or opportunity to get out of the way.

*Id.* at 46.

After Gutierrez submitted a medical payments claim to State Farm, a Claim Committee, which included Bolden, Bolden's supervisor, and Kevin Letcher, reviewed the case and concluded that Gutierrez was not an "occupant" under the terms of the State Farm policy and denied the claim. In making that decision on May 12, 2000, the Committee considered the written opinion of an attorney, Michael Blaize, whom State Farm had retained to review Gutierrez's medical payments claim. Attorney Blaize opined in relevant part as follows:

I would estimate that the probability of receiving a favorable verdict in a Declaratory Judgment action is approximately 60%. The issue is one that is not com-

pletely clear and I would expect that most trial courts would not give the benefit of a doubt to State Farm on such an issue. That is not to say that an Appellate Court would view the case in that light. In my opinion, on appeal, the probability of success rises to approximately 75%. I believe an Appellate Court would see this case much like it did in the *Miller v. Loman* [518 N.E.2d 486 (Ind.Ct.App.1987)] case. The critical issue is the conduct of the claimant and his intent to simply exit or alight from the vehicle. If the court's focus is on the intent factor, our chances of success are good.

*Unfortunately, three out of the four factors cited in Miller v. Loman are not favorable.* Gutierrez did not travel a great distance away from the truck before he was hit. Likewise, the time which elapsed from the moment he exited the passenger side and when he was hit was brief. Finally, he did not reach a zone of safety before the accident occurred. If the court (either Trial or Appellate) seeks to de-emphasize the fourth factor (i.e., the intentions of the claimant) a finding of coverage could certainly be made. In my opinion, such an analysis would, however, depart from the holding in *Miller v. Loman.*

*In my opinion, the proper result under current Indiana law is a finding that State Farm is not obligated to pay the medical expenses of Mr. Gutierrez because he was not occupying the truck at the time of the accident.* Likewise, under *Miller v. Loman,* he was not alighting from the truck at the time of the accident. *That particular result may not come easy. It may be worthwhile to give some consideration to conceding this battle in order to be better prepared to win the war.* Gutierrez has a viable liability claim against Cancel, a permissive user. It may be much easier to settle his liability claim if he is afforded Medical Payments Coverage at this juncture. On the other hand, if we do not put up a fight at this fork in the road, the claimant may feel he has the upper hand when it comes to final settlement negotiations.

Exhibit 2A at 4–5 (emphases added).

Prior to trial, both Cancel and State Farm moved to bifurcate alleging that each would suffer prejudice if the liability issues were tried together with the bad faith and breach of contract issues and that the jury would be confused by the disparate issues and burdens of proof. The trial court denied Cancel's motion as untimely. And, several months later, the court also denied State Farm's motion, stating that it had considered "issues regarding judicial economy, prejudice to the parties and the timing of [State Farm's] Motion to Bifurcate [shortly prior to trial]." Appellants' App. at 99.

On the first day of the jury trial in July 2004, Gutierrez sought production of the redacted portions of State Farm's claim file containing attorney Blaize's opinion. Gutierrez argued that State Farm had asserted an advice-of-counsel defense to the bad faith claim and had, therefore, waived the attorney-client privilege. But State Farm denied that it had asserted that defense. The trial court ordered State Farm to produce the unredacted claim file over State Farm's objection. State Farm moved for a mistrial, which the trial court denied. Later, Gutierrez called attorney Blaize to testify, which the trial court also allowed over State Farm's objection. In addition, Gutierrez introduced into evidence the remainder of State Farm's claim file, which included a "Liability Summary" showing that State Farm considered Cancel 100% at fault in causing the accident. Exhibit 2 at 38.

At the close of Gutierrez's presentation of evidence, State Farm moved for judgment on the evidence regarding the breach of contract and bad faith claims, which the trial court denied. And at the close of all of the evidence, State Farm moved for judgment on the evidence with respect to Gutierrez's status as an occupant of the vehicle at the time of the accident. The trial court also denied that motion.

As we have noted, the jury returned verdicts in favor of Gutierrez and against Cancel in the amount of $160,000 and against State Farm in the amount of $17,221.31 for breach of contract, $350,000 for bad faith, and $500,000 in punitive damages. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Bifurcation

██ The trial court is granted a wide degree of latitude in exercising its proper discretion in granting a motion for separation of trials, and we will reverse the denial only for an abuse of that discretion. *See Elkhart Comm. Schools v. Yoder*, 696 N.E.2d 409, 414 (Ind.Ct.App.1998). The court balances the interests of convenience and economy against the likelihood of substantial prejudice to the defendant's case. *Id.* If practicable, one trial is preferred. *Id.* While the avoidance of prejudice is a more than sufficient reason for a separate trial, a separate trial should not be granted solely upon the moving party's speculation that it might be prejudiced by certain testimony. *Id.*

██ Cancel contends that he suffered prejudice when Gutierrez's liability claim against him was tried with the breach of contract and bad faith claims against State Farm. Cancel concedes that "there is no

[Indiana] case specifically discussing the bifurcation of a bodily injury liability claim from a bad faith tort claim against an insurer." Brief of Appellant Cancel at 23. But he maintains that other jurisdictions "uniformly recognize the necessity to bifurcate the trial of the liability claim from the trial of the bad faith claim." *Id.* For instance, the West Virginia Supreme Court has held that bifurcation of those issues would avoid "undue prejudicial impact on a jury[.]" *State Farm Fire and Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721, 725 (1994).

Likewise, State Farm asserts that the "facts relevant to establishing Gutierrez's third-party negligence claim against Cancel and Gutierrez's claims of breach of contract, breach of the duty of good faith and fair dealing, and for punitive damages against State Farm are so completely unrelated that they should have been tried separately." Brief of Appellant State Farm at 66. State Farm further avers that "[t]he evidence presented on all three claims together most likely confused the jury." *Id.* And both State Farm and Cancel point out that evidence of insurance is generally inadmissible in a vehicular accident case "because it is irrelevant and likely to be prejudicial to the defendant." *Id.* at 67 (citing *Frankfort v. Owens*, 171 Ind.App. 566, 358 N.E.2d 184, 187 (1976)).

██ We agree with Cancel and State Farm that a bad faith claim against an insurance company should not be tried with a liability claim against an insured.[2] The issues underlying each cause of action are so different and the potential for prejudice and jury confusion is such that bifurcation is warranted. Here, we cannot say that Cancel was not unduly prejudiced by

---

2. This does not mean, as the dissent suggests, that a plaintiff is precluded from asserting a bad faith claim together with a liability claim in a single complaint for damages. We merely hold that those claims should be tried separately.

evidence of both the existence and the amount of his insurance coverage. Moreover, the admission of State Farm's claim file, which included its determination that Cancel was 100% at fault, was highly prejudicial. In sum, the complex issues underlying the medical payments coverage claim against State Farm should not have been tried with the simple liability claim against Cancel. We hold that the trial court abused its discretion when it denied Cancel's motion to bifurcate,[3] and we remand for a new trial on Gutierrez's negligence claim against Cancel.

We note that State Farm did not file its motion to bifurcate until approximately one month before trial and it was, therefore, untimely. But we need not address State Farm's argument on this issue because we reverse the damages awards for bad faith and punitive damages, *see infra.*

### Issue Two: Motions for Judgment on the Evidence

State Farm contends that the trial court erred when it denied its motions for judgment on the evidence regarding the bad faith and breach of contract claims. In reviewing a trial court's ruling on a motion for judgment on the evidence, we employ the same standard which governs the trial court. *Dahlin v. Amoco Oil Corp.*, 567 N.E.2d 806, 810 (Ind.Ct.App. 1991), *trans. denied.* We consider only the evidence and reasonable inferences to be drawn therefrom most favorable to the nonmoving party. *Id.* The motion should be granted only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the

claim. *Id.* Neither this court nor the trial court may weigh conflicting evidence when reviewing the propriety of the motion. *Id.*

### A. Bad Faith

Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind.Ct. App.1998), *trans. denied.* A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will. *Id.* A bad faith determination inherently includes an element of culpability. *Id.* The lack of diligent investigation alone is not sufficient to support an award. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind.1993). "On the other hand, for example, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty [of good faith]." *Id.*

State Farm maintains that the evidence shows that it had a rational, principled basis to deny Gutierrez's medical payments claim given the applicable case law on the issue of what constitutes "occupying" the vehicle. State Farm also asserts that there is no evidence that it conducted a "shoddy" investigation or "created" facts to support its denial of the claim. State Farm insists that the undisputed evidence shows that it properly investigated the claim and asserted its good-faith dispute regarding coverage.

Again, Gutierrez was entitled to medical payments coverage if he was "occupying" the vehicle, which the State Farm policy defines as "in, on, entering or

---

**3.** Cancel filed his motion to bifurcate seventeen days after the deadline set by the trial court at a status conference, and the trial court denied the motion as untimely. But

because Cancel's motion to bifurcate was filed more than two years before trial, and given the necessity for bifurcation in this case, the trial court should have granted the motion.

alighting from" the vehicle. Whether Gutierrez was occupying the vehicle depends upon a four-pronged analysis set out in *Miller v. Loman*, 518 N.E.2d 486 (Ind.Ct. App.1987). Under the *Miller* test, whether a person is "occupying" a vehicle for purposes of uninsured motorist coverage requires consideration of: (1) the distance between the accident and the covered vehicle; (2) the time separating the accident and the exit from the covered vehicle; (3) the individual's opportunity to reach a zone of safety; and (4) the individual's intentions in relation to the covered vehicle. *See id.* at 491.[4] The *Miller* court stated further that

> [t]hese factors will, of course, have greater or lesser weight depending upon the circumstances of each individual case. There may be instances in which one of the factors may be determinative, such as where the accident occurs at such a great distance from the automobile as to render it unreasonable to assume the process of alighting had not been completed.

*Id.* at 491–92.

■ State Farm contends that it had a good-faith argument under *Miller* that Gutierrez was not "occupying" the vehicle at the time of the accident and that its investigation of the claim was appropriate. As such, State Farm maintains that the trial court should have granted its motion for judgment on the evidence on that issue. We must agree.

Gutierrez's primary argument in support of his bad faith claim is that State Farm denied the claim before completing its investigation, but our review of the undisputed evidence shows that there was no final determination of coverage until State Farm's investigation was completed on May 12, 2000. In particular, Gutierrez contends that Bolden denied the claim on March 13. Bolden's log entry on that date states that Gutierrez was not "in" the vehicle when he was injured, which was a correct statement of fact as far as it went, and that medical payments coverage was not applicable. Exhibit 2 at 14. Thereafter, on March 15, Bolden talked to Gutierrez on the telephone, and she entered additional notes on Gutierrez's version of the facts and his injuries and medical treatment into the log. Thus, Bolden continued her investigation of the medical payments claim after March 13, contrary to Gutierrez's contention that she had denied the claim on that date.

Further, the undisputed evidence shows that Bolden did not have the authority to deny the claim and that Gutierrez had not yet submitted a claim under the medical payments provision on March 13. And there is no evidence supporting a reasonable inference that State Farm acted with dishonest purpose, moral obliquity, furtive design, or ill will in denying the medical payments claim. *See Colley*, 691 N.E.2d at 1261. Our review of the evidence under the *Miller* test leads us to conclude that State Farm had a rational basis for denying the claim.

This court has held that the denial of an uninsured motorist claim was not bad faith as a matter of law. *Becker v. Am. Family Ins. Group*, 697 N.E.2d 106, 108 (Ind.Ct. App.1998) (holding denial of claim not bad faith as a matter of law where jury's verdict established that issue of whether plaintiff was more than 50% at fault was difficult to determine). Likewise, here, we hold as a matter of law that State Farm's

---

4. The U.S. District Court for the Southern District of Indiana has noted, "One might wonder whether such a four-factor test can be applied as a matter of law. But the Indiana courts in *Miller* and the other cited cases decided the question as a matter of law." *Spencer v. Liberty Mut. Ins. Corp.*, 381 F.Supp.2d 811, 825 (S.D.Ind.2005).

denial of medical payments coverage was not done in bad faith. As such, the trial court erred when it denied State Farm's motion for judgment on the evidence on this issue. Because the issue of bad faith should not have gone to the jury, we reverse both the $350,000 award for bad faith and the $500,000 award for punitive damages.

## B. Breach of Contract

■ State Farm next contends that under *Miller*, Gutierrez cannot be determined to have been occupying the truck at the time of the accident. As such, State Farm maintains that there is no evidence that it breached its contract in denying Gutierrez medical payments coverage. And State Farm asserts that the trial court erred when it denied its motion for judgment on the evidence on that issue.

Gutierrez avers that in applying the four-pronged test in *Miller*, he was occupying the vehicle as a matter of law. The evidence shows that he was standing right next to the truck when he was struck by the open passenger door; he was outside of the truck for less than one minute at the time; he had not reached a zone of safety at the time; and he still had a close relationship to the vehicle in that he intended to re-enter the truck and resume the trip when the accident occurred.

In *Miller*, the plaintiff was a passenger in the insured's vehicle when the muffler fell onto the roadway. The driver stopped the vehicle, and plaintiff offered to retrieve the muffler. The driver told plaintiff to move the muffler from the roadway so that he could come back and pick it up later. Plaintiff exited the vehicle, traveled across two lanes of traffic, and started to kick the muffler when he was struck by the defendant's vehicle. The defendant moved for summary judgment alleging that the plaintiff was not entitled to uninsured motorist coverage because he was not occupying the

insured vehicle at the time of the accident. The trial court granted that motion.

On appeal, this court considered the four factors enumerated above, namely, plaintiff's distance from the vehicle, the time separating his exit from the vehicle and the accident, whether he had reached a zone of safety, and his intention in relation to the vehicle. *Miller*, 518 N.E.2d 486, 491 (Ind.Ct.App.1987). We held that the defendant was entitled to summary judgment as a matter of law since: (1) plaintiff was thirty feet away from the truck at the time of the accident; (2) plaintiff testified that "he never intended to do anything but kick the muffler off the road and return to the truck;" and (3) he never intended to reach a zone of safety. *Id.* at 492. We held that it was "clear he had embarked upon a 'course of conduct (kicking the muffler off the road) entirely distinct from acts reasonably necessary to make an exit from the car.'" *Id.*

In our analysis in *Miller*, this court included the following excerpt from a New York case: "a person has not ceased 'occupying' a vehicle until he has severed his connection with it—i.e., when he is on his own without any reference to it. If he is still vehicle-oriented he continues to 'occupy' the vehicle." *Id.* at 489 (citing *Gov't Employees Ins. Co. v. Keystone Ins. Co.*, 442 F.Supp. 1130 (E.D.Pa.1977)) (quoting *Allstate Ins. Co. v. Flaumenbaum*, 62 Misc.2d 32, 308 N.Y.S.2d 447, 462 (1970)). The *Miller* court also cites to several cases emphasizing the relationship the plaintiff had to the vehicle and whether he had reached a zone of safety at the time of the accident.

While not cited in *Miller*, the Wisconsin Supreme Court's opinion in *Moherek v. Tucker*, 69 Wis.2d 41, 230 N.W.2d 148 (1975), includes an analysis of cases where a plaintiff's trip was interrupted by car maintenance or the like and an accident

ensued. In *Moherek*, the plaintiff was standing between his car and another car when a third car collided with the cars, pinning him between the bumpers. The Wisconsin Supreme Court addressed whether the plaintiff was occupying the insured car at the time of the accident and considered whether he was "in or upon, entering into or alighting from" the car. The Wisconsin court reviewed analogous cases from Illinois, Ohio, New York, and California where the courts focused on the nature of the conduct of the plaintiff and his "purpose and intent" with respect to the vehicle at the time of the accidents. *Id.* at 151–52. Where, for example, the plaintiff had stopped his car, changed a tire, and was struck by a passing car as he was placing the old tire into the trunk, the Ohio Court of Appeals held that he was occupying the car. *See Madden v. Farm Bureau Mut. Auto. Ins. Co.*, 82 Ohio App. 111, 79 N.E.2d 586, 588–89 (1948).

In applying the *Miller* test, the United States District Court for the Southern District of Indiana recently held that a plaintiff was "occupying" an insured vehicle under facts analogous to those in the instant case. In *Spencer v. Liberty Mutual Ins. Corp.*, 381 F.Supp.2d 811 (S.D.Ind. 2005), the plaintiff was driving a tractor-trailer when he witnessed a pickup truck lose control and collide with another tractor-trailer. Spencer stopped his truck and got out to help the people involved in the accident. In particular, a passenger in the pickup truck was trapped because the dashboard had collapsed onto her legs. Spencer made several trips from his truck to the pickup truck and back, retrieving items to assist the passenger, such as a jacket to keep her warm.

While Spencer was attempting to free the passenger from the pickup truck, a van crashed into the pickup truck, causing serious bodily injuries to Spencer. Spencer had stopped and exited his truck approximately five minutes prior to that accident, but he had most recently been inside his truck approximately seven seconds prior to that accident. In applying the *Miller* factors, the District Court determined that Spencer was only one lane-width away from his truck at the time of the accident, had only been out of his truck for a matter of seconds, had not had an opportunity to reach a zone of safety, and "intended to return to his truck—with the motor still running—and to continue on his journey to deliver the boats for his employer as soon as he could." *Id.* at 825. As such, the court held that it expected "that the Supreme Court of Indiana would find as a matter of law that Spencer was 'occupying' the covered vehicle as that term is used in the uninsured motorist provision of the Liberty Mutual policy." *Id.*

We hold that under the circumstances present in this case, Gutierrez was occupying the insured vehicle at the time of the accident. Gutierrez was a passenger in the truck when he and another passenger got out to retrieve the playhouse that had fallen onto the roadway. Gutierrez was outside of the truck for less than one minute and was standing immediately next to the truck when he was struck by the open passenger-side door. Gutierrez had no plans to leave the truck and intended to exit only long enough to re-load the playhouse before he and the others continued on their journey. He had not had any opportunity nor any reason to reach a zone of safety. Gutierrez remained vehicle-oriented at all times. For these reasons, we hold that the trial court did not err when it denied State Farm's motion for judgment on the evidence on the breach of contract claim.

### Issue Three: Evidentiary Rulings

#### A. Attorney–Client Privilege

State Farm contends that the trial court abused its discretion when it

ordered State Farm to produce attorney Blaize's written opinion and when it permitted Gutierrez to call attorney Blaize as a witness at trial. Trial courts are vested with broad discretion with respect to discovery disputes. *Hartford Fin. Serv. Group, Inc. v. Lake County Park & Rec. Bd.*, 717 N.E.2d 1232, 1234 (Ind.Ct.App. 1999). Decisions regarding discovery matters will be reversed only if there has been an abuse of that discretion. *Id.* An abuse of discretion occurs when a trial court reaches a conclusion which is against logic and the natural inferences which can be drawn from the facts and circumstances before the trial court. *Id.* And there must be a rational basis for the trial court's decision. *Id.*

▆ The attorney-client privilege protects against judicially compelled disclosure of confidential information regardless of whether the information is to be disclosed by way of testimony or by court-ordered compliance with a discovery request which a party has attempted to resist. *Id.* at 1235. And as this court observed in *Hartford,* "an insurance company's retention of legal counsel to interpret the policy, investigate the details surrounding the damage, and to determine whether the insurance company is bound for all or some of the damage, is a 'classic example of a client seeking legal advice from an attorney.'" *Id.* at 1236 (quoting *Aetna Cas. & Surety Co. v. Superior Ct.*, 153 Cal.App.3d 467, 474, 200 Cal.Rptr. 471 (1984)).

▆ However, it is also well settled that the attorney-client privilege is not absolute for all purposes, but is a privilege which belongs to the client and may be waived by the client. *Whitehead v. State,* 500 N.E.2d 149, 154 (Ind.1986). Where the client testifies as to a specific communication or offers his attorney's testimony as to that communication, he thereby waives the privilege against disclosure of the whole of the communication. *Id.*

▆ Here, in response to Gutierrez's discovery request, State Farm produced a redacted version of its Claim Committee Report addressing whether Gutierrez was eligible for medical payments coverage. In that report, the Committee states that Bolden, as the claim representative, recommended that Gutierrez should not receive medical payments coverage "because he was not alighting from the truck when he was struck. This position is supported by case law." Exhibit 2 at 36. Paragraph Nine of that report states: "Name and recommendation of defense attorney. Michael P. Blaize .... Attorney Blaize's recommendation is as follows: [REDACTED]." *Id.* at 35–36. Then, Paragraph Eleven of the report states: "Recommendation of Claim Superintendent. Team Manager, Scott Lewis, *concurs with Attorney Blaize's opinion and Tanya Bolden.*" *Id.* at 36 (emphasis added). The "Action Plan" set out in the report states that State Farm would deny medical payments coverage for Gutierrez.

▆ State Farm contends that advice-of-counsel evidence should not have been admitted because it was not asserted as a Trial Rule 8(C) affirmative defense.[5] We hold that while State Farm did not plead advice-of-counsel as an affirmative defense, it waived the attorney-client privilege when it disclosed attorney Blaize's opinion

---

5. Gutierrez contends that State Farm asserted an advice of counsel affirmative defense and did, therefore, waive the attorney-client privilege. *See, e.g., In re Carbo Cerainics, Inc.*, 81 S.W.3d 369, 378–79 (Tex.Ct.App.2002) (holding attorney-client privilege waived when advice of counsel asserted as affirmative defense). But we need not address that issue because the record does not support Gutierrez's contention.

in its initial discovery response to Gutierrez. Specifically, State Farm included in the redacted version of the Claim Committee Report the statement of Bolden's supervisor that he concurred with attorney Blaize and with Bolden, who explicitly stated that she would deny coverage. As such, State Farm disclosed to Gutierrez that attorney Blaize's opinion, a specific communication on the coverage issue, coincided with Bolden's opinion. *See Whitehead,* 500 N.E.2d at 154. Having thus opened the door on attorney Blaize's opinion, it was not error for the trial court to order State Farm to disclose that opinion contained in the Report and to permit Blaize's testimony at trial. *See id.* We cannot say that the trial court abused its discretion on this issue.

Waiver notwithstanding, State Farm has not demonstrated how it was prejudiced by the disclosure of attorney Blaize's opinion. State Farm contends that a violation of the attorney-client privilege is prejudicial per se, but it does not offer any case law in support of that contention. Moreover, our review of attorney Blaize's opinion suggests that it was, if anything, beneficial to State Farm in its defense of the bad faith claim. attorney Blaize opined that State Farm would most likely prevail in a declaratory judgment action on the question of whether Gutierrez was occupying the vehicle. Specifically, attorney Blaize stated, "In my opinion, the proper result under current Indiana law is a finding that State Farm is not obligated to pay the medical expenses of Mr. Gutierrez because he was not occupying the truck at the time of the accident." Exhibit 2A at 5. That opinion is evidence that State Farm had a rational basis for denying coverage. Thus, State Farm has not demonstrated prejudice as a result of the trial court's discovery order

and attorney Blaize's testimony, over State Farm's objection, at trial.

### B. Other Rulings [6]

 Cancel maintains that the trial court abused its discretion when it admitted into evidence the existence of and limits of the applicable insurance policy. It is well settled that evidence of a defendant's insurance is not competent in a personal injury action and its admission is prejudicial. *Rausch v. Reinhold,* 716 N.E.2d 993, 1002 (Ind.Ct.App.1999), *trans. denied.* The rationale for not allowing evidence of insurance coverage is that if the jury becomes aware of the fact that the defendant carries liability insurance and will not bear the brunt of any judgment, the jury may be prejudiced in favor of an excessive verdict. *Stone v. Stakes,* 749 N.E.2d 1277, 1280 (Ind.Ct.App.2001), *trans. denied.*

 Cancel also contends that the trial court abused its discretion when it permitted testimony that State Farm had concluded that Cancel was 100% at fault in causing the accident. Cancel maintains that that evidence constituted an impermissible legal conclusion and was unduly prejudicial to him. We must agree.

 Finally, Cancel maintains that the trial court abused its discretion when it admitted into evidence his statements to State Farm. Our supreme court has held that where the policy of insurance requires the insurer to defend claims against the insured, statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are protected from disclosure. *Richey v. Chappell,* 594 N.E.2d 443, 447 (Ind.1992). We hold that Cancel's statements to State Farm are inadmissible at the new trial.

6. We address these issues, as they may recur during the new trial.

Cancel has demonstrated that he was likely prejudiced by the challenged evidentiary rulings. We are remanding for a new trial on the negligence claim only, and none of the challenged evidence is relevant to the issues underlying that claim. If for some reason Gutierrez seeks to admit any of the challenged evidence at trial, the trial court should exclude it.

### Conclusion

In sum, the trial court abused its discretion when it denied Cancel's motion to bifurcate the issues for trial, and we remand for a new trial on Gutierrez's negligence claim against Cancel. State Farm's motion to bifurcate one month before trial was untimely. The trial court erred when it denied State Farm's motion for judgment on the evidence regarding Gutierrez's bad faith claim, and we reverse the award for bad faith and the punitive damages award. The trial court did not err when it denied State Farm's motion for judgment on the evidence with respect to Gutierrez's breach of contract claim, and we affirm the $17,221.31 award on that claim. While the attorney-client privilege is implicated in Gutierrez's request for attorney Blaize's opinion and testimony, State Farm waived that privilege when it disclosed attorney Blaize's opinion on coverage in the redacted version of its Claim Committee Report submitted in response to discovery. Finally, we agree with Cancel that the trial court should have excluded evidence of his insurance policy, State Farm's opinion on his liability, and his statements to State Farm.

Affirmed in part, reversed in part, and remanded for a new trial.

BAKER, J., concurs.

BAILEY, J., concurs in part and dissents in part with separate opinion.

BAILEY, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's determination that the trial court abused its discretion by denying Michael Cancel's untimely motion to bifurcate Francisco Gutierrez's "liability" claim against Cancel and his "bad faith" and "breach of contract" allegations against State Farm. I likewise disagree with the majority's decision to remand for a new trial on Gutierrez's negligence claim against Cancel. Instead, I believe that the trial court acted within its discretion when it denied Cancel's motion to bifurcate and, further, that the jury verdict of $160,000 was within the bounds of the evidence presented such that a new trial is unwarranted.

The trial court has a wide degree of latitude in exercising its proper discretion in granting a motion for separation of trials, and we will reverse the denial only for an abuse of that discretion. *See* Ind. Trial Rule 42(B); *see also Elkhart Cmty. Sch. v. Yoder*, 696 N.E.2d 409, 414 (Ind.Ct.App. 1998). The trial court balances the interests of convenience and economy against the likelihood of substantial prejudice to the defendant's case. *Yoder*, 696 N.E.2d at 414. If practicable, one trial is preferred. *Id.* Indeed, while the avoidance of prejudice is a more than sufficient reason for a separate trial, a separate trial should not be granted solely upon the moving party's speculation that it might be prejudiced by certain testimony. *See Frito–Lay, Inc. v. Cloud*, 569 N.E.2d 983, 990 (Ind.Ct.App.1991).

Here, in determining that the trial court committed reversible error by denying Cancel's motion to bifurcate, the majority first makes the blanket assertion "that a bad faith claim against an insurance company should not be tried with a liability claim against an insured." Op. at 579.

However, a review of Indiana case law reveals that, in similar contexts, plaintiffs have brought bad faith claims against insurers simultaneously with an action against an uninsured motorist and/or a breach of contract action against the insurer. *See, e.g., Allstate Ins. Co. v. Hammond,* 759 N.E.2d 1162, 1169 (Ind.Ct.App. 2001) (citing *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 522 (Ind.1993) (insured filed a four-count complaint, two against the uninsured motorist, one against the insurer for breach of contract, and one against the insurer for bad faith) *and Gooch v. State Farm Mut. Auto. Ins. Co.,* 712 N.E.2d 38, 39 (Ind.Ct.App.1999) (insured sued insurer for breach of contract and later amended complaint to add bad faith claim), *trans. denied* ).

Next, to support its finding of reversible error, the majority seems to rely upon the following arguments made by Cancel and State Farm:

1. That "[Cancel] suffered prejudice when Gutierrez's liability claim against him was tried with the breach of contract and bad faith claims against State Farm;"

2. That the " 'facts relevant to establishing Gutierrez's third-party negligence claim against Cancel and Gutierrez's claims of breach of contract, breach of the duty of good faith and fair dealing, and for punitive damages against State Farm are so completely unrelated that they should have been tried separately;" '

3. That " '[t]he evidence presented on all three claims together *most likely confused* the jury;' " and

4. That "evidence of insurance is generally inadmissible in a vehicular accident case 'because it is irrelevant and *likely to be prejudicial* to the defendant.' "

Op. at 579–580 (internal citations omitted) (emphasis added). These contentions, however, do not demonstrate that Cancel was actually prejudiced by the single proceeding or that the jury was actually confused by the evidence presented. To the contrary, as evidenced by their verdicts—which included only verdict forms A, C, E, and G—far from being confused, this jury was able to distinguish between the various tort and contract claims alleged, separate the evidence relating to each claim, and assess damages within the bounds of the evidence presented. Mere speculation about possible prejudice is insufficient to justify a separate trial and thereby undermine the jury's well-founded verdict. *See Frito–Lay,* 569 N.E.2d at 990.

Nevertheless, the majority has concluded that "the admission of State Farm's claim file, which included its determination that Cancel was 100% at fault, was highly prejudicial" and, further, that it "cannot say that Cancel was not unduly prejudiced by evidence of both the existence and the amount of his insurance coverage." Op. at 580. I believe, however, that, under the circumstances of this case where there is no real evidentiary dispute regarding Cancel's liability, the prejudicial effect, if any, of admitting this evidence does not warrant a new trial. Granted, the opinions of management—as represented in the claim file—along with evidence of insurance in some circumstances could be highly prejudicial and should, in foresight, be avoided; however, in hindsight, the jury verdict on the compensatory damage award in this case does not evince signs of prejudice.

First, and with respect to the "claim file," the evidence reveals that, after the playhouse fell out of the truck, Cancel pulled onto the shoulder of the road, put the truck in reverse gear, and attempted to back up to be closer to the playhouse. (Tr. at 753) However, Cancel was unable to

back up because the chain, which had secured the playhouse, was wrapped around the rear axle. (Tr. at 753) At Cancel's request, Gutierrez "exited the vehicle to unhook the chain." Tr. at 753. When Gutierrez was finished freeing the chain from the axle, he "head[ed] back to the front of the truck to get in." *Id.*

Meanwhile, approximately five to ten seconds after Gutierrez had exited the truck from the passenger-side door, Cancel started to back up the truck. (Tr. at 402) Although Cancel looked into his rearview and side mirrors, he never turned his head to see where Gutierrez was located. (Tr. at 400–01) Nor did he make certain that the passenger door was closed. (Tr. at 402) As the truck reversed, the passenger door "swung open" and struck Gutierrez. *Id.* at 402. Further, there is no indication in the record that Gutierrez was comparatively at fault for the accident.[7] In light of this overwhelming evidence of negligence, State Farm's determination that Cancel was 100% at fault for the accident was merely a summary of that which was obvious and clearly proven by the evidence presented to the jury. Accordingly, the trial court's denial of Cancel's motion to bifurcate and its admission of State Farm's claim file, even if erroneous, constitute nothing more than harmless error.

Second, Cancel was not unduly prejudiced by evidence of both the existence and the amount of his insurance coverage. In Indiana, a person may not operate a vehicle on a public road, street, or highway unless he or she continuously maintains proof of financial responsibility. *See* Ind. Code §§ 9–25–4–1, 9–25–4–3, *and* 9–25–4–4. Thus, the issue of insurance, in the case at bar, is like the story of the Emper-

or's New Clothes: the Emperor, wearing only his invisible suit of clothing, stands naked in the courtyard but no one is permitted to, or dare, discuss that which is obvious and known to all. In the majority's view, by merely mentioning that which was obvious, Cancel was presumptively prejudiced and is entitled to a new trial. However, the jury verdict tells a different story. The jurors were specifically instructed that, in deciding what or whom they believe, they should use their knowledge, experience, and common sense gained from day-to-day living. (Tr. at 1074) Insurance is known by the responsible citizen to be required to operate lawfully upon our roadways. This knowledge and experience is not lost on those responsible citizens who are called upon to serve as jurors. Thus, the existence of insurance coverage, while potentially prejudicial in some cases, does not appear to have had an impact on the determination of compensatory damages in this case.

Further, to the extent that the jury verdict exceeded the amount of Cancel's insurance coverage, we should not force Gutierrez to retry the case. Cancel has other remedies available to him to rectify the situation if he believes that his contentions were not properly defended. However, reversing a jury verdict that was based upon the evidence rather than the limited amount of liability coverage is not, in my opinion, the appropriate course to follow.

Finally, it is important to note that Indiana courts have a high regard for the trial court's discretion in determining whether to bifurcate a proceeding. In *Frito-Lay,* for example, another panel of this Court cautiously held that the trial court had abused its discretion by denying bifurcation of the liability and damages

---

7. After Gutierrez had exited the vehicle, another passenger existed the same door to help retrieve the playhouse.

 589

issues. 569 N.E.2d at 990. There, the jury was "inundated" with evidence that created sympathy for the gravely disabled, sixteen-year old victim—who was a junior varsity cheerleader—and may have prejudiced the verdict on the liability issue. *Id.* This evidence included testimony regarding the victim's youth, social nature, lost career opportunities, the gruesomeness and severity of the injuries to her brain and body, and the severe and permanent neuropsychological and economic effects of these injuries. *Id.*

Before trial, the *Frito Lay* trial court denied the motion for separation because the plaintiff alleged that the issues concerning the cause of the accident and the injuries suffered by the victim were intertwined.[8] However, the plaintiff presented no evidence during the trial to show the cause of the accident through the injuries, and this Court found that Frito–Lay's defense on the issue of liability was "very strong," i.e., the victim had failed to yield to the traffic on a preferred highway. *Id.* at 991. Indeed, even though the trial was inundated with the potential for sympathetic prejudice and permeated with errors, the jury still allocated fault on the victim's part just 1.1% shy of complete exoneration for Frito–Lay. *Id.* Interestingly, however, the *Frito–Lay* Court recognized that had it not been required to reverse on other grounds—i.e., issues of liability and damages for errors unrelated to bifurcation—it would have been extremely reluctant to invade the province of the trial court's discretion on the issue of bifurcation. *Id.* at 991.

By contrast, in *Yoder*, 696 N.E.2d at 415, the Court determined that the trial court did not abuse its discretion by declining to bifurcate the trials on the damages and liability issues. There, the school de-

fendant had not demonstrated any independent grounds for reversal, nor had it shown a defense on the liability issue as strong as that of Frito–Lay, where the victim failed to yield to the Frito–Lay truck when the truck was traveling on a preferred highway. *Id.* The *Yoder* Court also noted that the issues of damages and liability were far more intertwined than they were in *Frito–Lay*. *Id.* Specifically, the basis for the defendant's liability—i.e., the breach of its duty to provide functional seat belts—was directly related to the nature and severity of the victims' injuries. *Id.*

In my view, the present case is more similar to *Yoder* than *Frito–Lay*. In particular, here, Cancel has not demonstrated any independent grounds for reversal, nor has he shown a strong defense on the liability issue. Rather, as previously mentioned, the evidence reveals that, after Gutierrez exited the passenger side of the truck, Cancel—without turning his head to see where Gutierrez was located—began to drive the truck in reverse gear. The truck's passenger door struck and injured Gutierrez. Moreover, like the defendant in *Yoder*, Cancel has failed to proffer a persuasive argument on the question of liability sufficient to justify bifurcated proceedings. Accordingly, I do not agree that the trial court abused its discretion by denying Cancel's motion to bifurcate and would affirm the jury's verdict in the amount of $160,000, in favor of Gutierrez.

For these reasons, I respectfully dissent from the majority opinion. However, in all other respects, I concur in the majority opinion.

---

8. There, plaintiff's counsel had suggested that the evidence of the severity of the victim's injuries would prove the speed of defendant's van and the manner in which the vehicles impacted with each other. *Frito–Lay*, 569 N.E.2d at 990.